**Richmond.**

NORFOLK & WESTERN R. CO. v. DUNNAWAY'S ADM'R.

APRIL 9, 1896.

93    29
93   139
93   544
93    29
94   456
93    29
96   441
93    29
99   160
93    29
102  348
102  502
e102 503
|102  792

1. APPELLATE PROCEEDINGS—*Notice of Intention to Appeal—Transcript of Record—Section 3457 of Code Directory.*—The provisions of section 3457 of the Code requiring a party intending to apply for a writ of error or appeal to give notice to the opposite party or his counsel of his intention to apply for a transcript of the record, and forbidding the clerk to make out and deliver such transcript until it appears that such notice has been given, which fact the clerk is required to certify with the record, are directory only. But it is a plain violation of official duty for a clerk to make out and deliver a transcript until it appears that notice has been given as required by law.

2. APPELLATE PROCEEDINGS—*Motion for New Trial—Demurrer to Evidence.*—It is not necessary for a motion for a new trial to be made in the trial court in order to have a judgment on a demurrer to evidence reviewed in the appellate court.

3. RAILROADS—*Trespassers—Notice of Danger—Object Between Rails—Negligence.*—A railroad company does not owe to a trespasser on its track the duty of foresight, but only the duty of ordinary care. It may not wilfully injure him, but is not obliged to take precautions to prevent injury until it has such notice or belief of his danger as would put a prudent man on the alert. The company is not obliged to reduce the speed of its trains, nor to stop them, whenever an object is seen on the track at a point where it has the exclusive right of way, which it has no reason to believe is, but which by possibility may be, a human being in peril, in order to ascertain what it is. And, though the object be between its rails, and the engineer of the train observe it in ample time to reduce the speed of the train or stop it, and neither blows the whistle, rings the bell, nor slackens the speed of the train until too late to avoid a collision, and such collision occurs, resulting in the death of a human being, the company is not liable if the engineer and those in charge of the train have no reason to believe, and do not, in fact, believe that the object is animate until within a very short distance of it, and then use all the means within their power to avoid such collision, without avail.

Error to a judgment of the Circuit Court of Halifax county, rendered November 10, 1893, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Kirkpatrick & Blackford* and *A. W. Nowlin,* for the plaintiff in error.

*Wm. R. Barksdale, Henry Edmunds* and *Wm. P. Barksdale* for the defendant in error.

BUCHANAN, J.

The defendant here insists that the writ of error in this case was improvidently awarded and should be˙ dismissed. He bases this contention on two grounds.

First. That the plaintiff company did not comply with section 3457 of the Code, which provides that the party intending to apply for an appeal or writ of error, shall give notice to the opposite party or his counsel, if either reside in the State, of his intention to apply for a transcript of the record which is required to accompany his petition for an appeal or writ of error; that the clerk of the court shall not make out and deliver such transcript unless it is made to appear that such notice was given, and that a certificate of the clerk stating the fact that such notice has been given shall accompany such transcript when presented to an appellate court or judge.

No such notice was given in this case, nor does the clerk make the required certificate.

This question was fully considered by this court in the case of *Mears & Lewis* v. *Dexter,* 86 Va. 828, and the conclusion reached that these provisions of the statute were merely

directory, and not designed to limit the jurisdiction of the appellate court.

The question of determining whether a statute is mandatory, or directory only, is frequently one of much difficulty; and if this statute was before the court for the first time for construction I would strongly incline to the opinion that it should be construed to be mandatory.

Where an officer fails to perform some duty imposed upon him by law, and the party whose rights are to be affected by its non-performance has done all that the law requires of him, there is good reason why the law should be held directory, unless the act required to be done by the officer is of the essence of the transaction; for no man ought to be deprived of his right for the failure of a public official to perform his duty, when he himself has done all that he is required to do to protect them; but, when the party himself fails to perform a plain duty imposed upon him by law, the case is very different. If his rights are lost, they are lost by his own negligence, and no one is responsible for it but himself. For the courts to hold in such a case, that his failure or refusal to obey the law shall not in any wise affect his rights, would seem to be annulling rather than administering the law. The case at bar is an illustration of the effect of holding the statute to be directory, for the record shows that the plaintiff in error, knowingly, if not purposely, omitted to give the notice required. But as the decision referred to was made at the March term, 1890, of this court, and three General Assemblies have since been elected by the people, and no amendment made to that section of the Code, it would seem that the construction given it by this court meets with the approval of the law making power. Again, since that decision was made, litigants may have been preparing their cases for the appellate court under the impression that strict compliance with the requirements of that statute was not absolutely

essential to their right of appeal. To hold now that the statute was mandatory, and dismiss all appeals and writs of error in which those provisions of the statute had not been complied with, might work great injustice. We are of opinion, therefore, that the provisions of the statute in question, should be held to be directory in accordance with the decision of the court in the case of *Mears & Lewis* v. *Dexter.*

The provisions of the statute are wise and salutary, and the party wishing to apply for an appeal or writ of error, and the clerk of the court ought to comply with them. It is a plain violation of the duties of his office for a clerk to make out and deliver a transcript of the record until it appears that notice of the application has been given as required by law.

The other ground upon which the motion to dismiss is based is, that there was no motion for a new trial in the Circuit Court, and that without such motion this court has no power to review the proceedings of that court. The case of *R. & D. R. R. Co.* v. *Scott*, reported in 20th S. E. Rep. 826, is relied upon to sustain this contention. That case presented, as does this, the question whether the judgment of the trial court upon a demurrer to evidence can be reviewed by this court when there was no motion for a new trial in that court; and it was held that it could not. That decision is not, in our opinion, in accord with the uniform practice in this court prior thereto. The case of *Newberry* v. *Williams*, 89 Va. 298, and the cases therein cited, are relied upon to sustain it.

In the case of *Newberry* v. *Williams*, there was no demurrer to the evidence, but the whole case was submitted to the jury, who found a verdict for the defendant. This court held that it had no power to review the proceedings had in that case, because there had been no motion for a new trial in the Circuit Court. The cases were reviewed by Lewis, P., who delivered the opinion of the majority of the court, and

the conclusion reached that if errors, or supposed errors, of any kind are committed by a court in its rulings during the trial of a case by a jury, the appellate court cannot review these rulings unless two conditions concur, viz.: First. The rulings must have been objected to when made, and a bill of exceptions taken, or the point reserved and the bill of exceptions taken during the term; and, secondly, a new trial must also have been asked, overruled, and objected to, and this noted upon the record. There is no intimation in that case, however, that this court could not review the judgment of the trial court on a demurrer to evidence unless there had been a motion for a new trial.

One of the cases cited as authority and commented upon by Judge Lewis was the case of *Humphreys* v. *West*, 3 Rand. 516, in which there was a demurrer to the evidence, and there was no motion for a new trial. The court refused to consider the question whether or not the conditional verdict found in that case was excessive because there had been no motion for a new trial, but reviewed the judgment of the trial court upon the demurrer to evidence, reversed it, and gave judgment in favor of the opposite party.

*Green* v. *Judith*, 5 Rand. 1, and *Briggs* v. *Hall*, 4 Leigh 484, were cases in which there were demurrers to evidence. No motion for a new trial was made in either, yet this court took jurisdiction, reviewed the judgments on the demurrers to evidence, and affirmed the trial court in each case.

In the late case of *W. U. Tel. Co.* v. *Va. Paper Co.* 87 Va. 418, in which there was also a demurrer to evidence, the court refused to consider any objection to the verdict of the jury, on the ground that the damages were too small, because there was no motion for a new trial; yet the court took jurisdiction of the case, reviewed the judgment of the trial court upon the demurrer to evidence, and affirmed it.

All these cases were cited and commented on with approval by Lewis, P., in the case of *Newberry* v. *Williams*.

Instead of these authorities, which were relied on in *R. & D. R. R. Co.* v. *Scott*, sustaining the conclusion reached in that case, they show that it has not been the practice to move for a new trial in the court below in order to give this court the right to review its judgment upon a demurrer to evidence.

The case of *Riddle* v. *Core*, 21 West Va. 530, shows that the same practice prevails in West Virginia.

The plaintiff in a writ of error to a judgment on a demurrer to evidence, where, as in this case, there is no objection to the verdict of the jury, does not wish a new trial. He wishes the judgment complained of reversed, and a judgment rendered in his favor. This court in such a case as this cannot grant a new trial. It must either affirm the judgment of the court below, or reverse it and give judgment for the opposite party. Why should a party be required to ask a trial court to do what he does not wish done as a condition precedent to his right to ask an appellate court to do what he does wish done?

It is clear to us, both upon reason and authority, that there is no necessity for a motion for a new trial in the trial court in order to have a judgment on a demurrer to evidence reviewed in this court.

The facts disclosed by the record are as follows :

The deceased, at the time of his death, was eleven years old and very small, being about the size of an ordinary boy of eight years of age. His mother hired him to one W. D. Canada, to mind his cow and do other light work. The railroad passes through Canada's field, in which he pastured his cow, and he had frequently warned the boy to keep his cow and calf off the track, and not let them get hurt. On the morning of the accident, July 9, 1892, deceased went to the field to pasture the cow a short time before nine o'clock, the time for the south-bound passenger train to pass the point at

which the accident occurred. About this time he was seen on the end of a cross-tie, some forty or fifty yards north of the point where he was killed. When seen by the engineer in charge of the train that killed him, he was lying on the railroad in a shallow cut, about twenty-five feet from its mouth, between the cross-ties, with his head on or against the west rail and his feet towards the east rail, and was apparently asleep. The road, after leaving Lennig, a station less than a mile north of the point at which the accident happened, is slightly down grade, and passes through a deep cut about two hundred and sixty yards from where the child was lying and first seen by the engineer. The train was on time and running thirty miles an hour, its accustomed rate of speed. When the train emerged from the cut, the engineer saw an object on the track, which he said he thought was a shadow or a bush cut from the right of way. He told W. D. Canada and others immediately after the accident that he thought the object was a dog. He gave the usual station blow for Lennig, and blew for the crossing just below, but neither rang the bell, blew the whistle, nor abated the rate of speed at which he was running when he first discovered the object on the track. When he had approached to within the space between two telegraph poles, or about one hundred and sixty feet, he discovered that the object was a boy, and then did all in his power to stop the train and save his life. He cut off steam, applied brakes to the emergency stops, reversed the engine, and threw sand under the wheels. When the train passed over the boy the driving-wheels of the engine had ceased to revolve. The train was stopped in about two train lengths, and passed beyond where the boy was lying about one train length and the length of a car. In other words, the train was stopped in a distance of four hundred feet. It was proved that the boy was a heavy sleeper, his employer sometimes having to turn him over with his foot, or pour water on his face to awaken him.

When killed he was clad in shirt and pants only. The shirt was originally white, but was soiled from a week's wearing.

It appears from the evidence, and was admitted in argument, that the engineer had time after he first saw the object to have stopped the train and thus avoided the accident, but could not have done so after he discovered that the object was a human being.

The identical question involved in this case has not, so far as the reported cases show, been decided by this court; but the duty which a railroad company owes to a trespasser upon it its track was carefully considered in the recent case of *Seaboard and Roanoke R. R. Co.* v. *Joyner's Adm'r*, 92 Va. 354, 362, and conclusions reached which control this case. It was said in that case that it was "no longer an open question in Virginia, that except at crossings and places where the public have by law or custom, or by the acquiescence of the company, a right to the use of railroad property, the railroad company has the exclusive right to the uninterrupted enjoyment of its roadbed, track, and other property. They owe no special duty to mere trespassers, but they cannot with impunity inflict upon them reckless or wanton injury; and when it is said that they owe to trespassers only the duty of ordinary care, it is intended merely to say that trespassers are not entitled to that provident circumspection which, as far as possible, foresees and forestalls danger. That high degree of duty is owed to passengers only; but where the danger of the trespasser is discovered, it then becomes the duty of the railroad company to avoid the infliction of injury, without regard to the fact that the trespasser was himself guilty of contributory negligence. It is then incumbent upon the company to do all that can be done, consistently with its higher duty to others, to save the trespasser from the consequence of his own improper act. The law upon this subject is, we think, properly stated in the ninety-ninth section (4th Ed.) of Shearman & Redfield on the Law of Negligence,

where it is said that the plaintiff should recover notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was proximately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if he has sufficient notice or belief to put a prudent man on the alert, and he does not take such precautions as a prudent man would take under similar notice or belief." See *Donahoe* v. *Railroad Co.* 83 Mo. 543; Bishop on Non Contract Law, section 1037; Beech on Contributory Negligence, page 21.

These conclusions were approved and reaffirmed in the more recent case of *Tucker's Adm'r* v. *N. & W. R. R. Co.* decided at the January term of the court, 92 Va. 549.

The evidence in the case under judgment shows, and it is admitted in argument, that the railroad company, after it discovered that the object on its track was a sleeping boy, did all that could be done to stop the train and save his life.

Nor does the evidence show that the engineer could have discovered earlier than he did that the object on the track was a human being. The engineer states positively that he could not have done so, and the plaintiff's evidence tends to sustain him upon this point. The witness who testified that an ordinary black felt hat could be seen where the boy was killed from the point where the engineer could and did first see the object on the track, when asked the question whether the engineer could have told what the object was lying between the ties at that distance, replied, "No, sir; I do not reckon he could have told, of course, that distance."

The engineer does not seem to have entertained any doubt as to the character of the object. He was not debating the question whether the object on the track was a human being

or not.   He thought it was a shadow, or bush, or dog, until he came within a little over fifty yards of it, when he saw that it was a prostrate and sleeping, or motionless boy.   Then he did all that could be done to avoid the accident.

It is contended, however, that it was culpable negligence for the engineer to run down upon an object to which he might owe protection, without having ascertained what it was; and that it was his duty to approach it with his train under control, and to be in readiness to discharge his duty to it, whatever that duty might be.

Cases are cited to sustain this view.   Such of them as do sustain it, when carefully examined, will be found, as in the case of the *East Tenn. & Ga. R. R. Co.* v. *St. John*, 5 Sneed 524, were decisions made in jurisdictions where a higher degree of care and caution is required for the protection of trespassers than prevails in this State, or generally.   The Tennessee decision was controlled by a statute, which made a railroad company responsible for all injuries to persons or property which might have been prevented *by the utmost care and caution* on the part of the railroad company.

In the case of *Deans* v. *N. & W. R. R. Co.* 109 N. C. 686, 695, the court held the railroad company liable because the jury, under all the facts and circumstances of the case, were justified in believing that the engineer, in the exercise of due diligence, might have discovered from his elevated position on the engine the fact that the plaintiff's intestate was lying helpless across the railroad track, and that by prompt and strenuous efforts he could have saved his life without putting the passengers on the train in jeopardy.

In the case of *Meeks* v. *S. P. R. Co.* 56 Cal. 513, 518, the judge, delivering the opinion of the court, said that there was " in the record testimony on the part of the plaintiff tending to show that at the place the injury occurred, and for a considerable distance beyond, the road of the defendant was perfectly straight and free from weeds and other like

obstructions; that the day was very clear, and that at the time of the injury the *plaintiff could have been recognized as a boy on the track at a distance of from three hundred to three hundred and fifty yards.* This testimony undoubtedly tends to show negligence on the part of the employees of the defendant, but it is greatly strengthened by the testimony of the defendant's witnesses."

This was the second time the case had been before that court. The record in the first trial disclosed a case very similar to the one in judgment, and the court held that, upon the case as made, the company was not liable. In commenting upon that decision (which is reported in 52 Cal. 604), on the second appeal (56 Cal. 517), the court said: " It should be observed in this connection that there is no evidence whatever of the lack of diligence and due care upon the part of those in charge of the train. The plaintiff was lying on the track, parallel with the rails. He was discovered by the engineer and lookout at some distance ahead; but, notwithstanding a continued scrutiny exercised by them, they were unable to discover that the object at which they were looking was other than a brush, or some insignificant obstruction upon the track. When they did discover that a child (some six years of age) was lying there, they used every endeavor to slow up the train, but it was then too late to prevent the accident by any, even the utmost, effort on their part."

In the case of *Isabel* v. *Han. & St. John R. R. Co.* 60 Mo. 475, the court said: " Moreover, it is clearly shown that the engineer and fireman discovered the infant and had abundance of time to have stopped the train and saved its life, but they *debated* as to what it really was till it was too late. Might they not, by a close scrutiny and a proper observance, which it was their duty to give when they discovered an object on the track, have discovered that it was a child? The testimony is conclusive that the child was dressed in

*red*, and that would have very easily distinguished it from a hog or dog.  *  *  *  *  The case presented then is, that the persons running the train saw something on the track in time to avoid collision or injury; and if, aftey they observed it, they could, by the exercise of that care and caution which the law imposes upon them, have perceived that it was a child in time to stop the train, and they were negligent, the company is liable."

These cases, in our opinion, except the one from Tennessee, do not sustain the contention of the defendant in error. On the contrary, they seem to recognize the doctrine laid down by this court in *Joyner's Case* and *Tucker's Case*, that when the danger of the trespasser is discovered, or by ordinary care and caution might have been discovered, it then becomes the duty of the railroad company to avoid the infliction of the injury without regard to the fact that the trespasser was himself guilty of contributory negligence, and that it must do all that can be done, consistently with its higher duty to others, to save him from the consequences of his own improper act.

Upon the evidence in this cause we do not think that a jury would have been justified in believing that the company could have discovered that the object on the track was a human being earlier than it did, nor that it was possible after it discovered that the object was a human being to avoid the injury.   Neither do we think that it was the duty of the railroad company to check or stop its train until it had discovered, or by ordinary care and caution might have discovered, that the object on its track was a human being. It would be a harsh rule to require railroad companies to check or stop their trains at points where they have the exclusive right to the uninterrupted enjoyment of their tracks whenever any object is seen upon them which they have no reason to believe is, but which by possibility may be, a human being in peril, until they have ascertained cer-

tainly what it is, and it would greatly interfere with, if not defeat, speedy travel and transportation, and thwart the object for which such corporations are created.

I am of opinion that the judgment of the Circuit Court is erroneous and must be reversed, and judgment rendered for the defendant.

KEITH, P., and HARRISON, J., concur in the opinion of BUCHANAN, J.

RIELY, J., dissenting, said:

I am unable to concur in the conclusion of the majority of the court.

The law, as I understand it, does not require that the defendant shall actually know of the danger to which the plaintiff is exposed in order to render the former liable for an injury to the latter. It is enough, if he has sufficient notice to put a prudent man on the alert, and he did not take such precautions as a prudent man would take under similar notice. This principle was enunciated in the case of *Seaboard and Roanoke R. R. Co.* v. *Joyner's Adm'r*, 92 Va., 354, which was recently decided by this court, and was since reiterated in the case of *Tucker's Adm'r* v. *N. & W. R. R. Co.* 92 Va. 549. Its application to the case at bar should, in my view, determine it in favor of the plaintiff.

The evidence shows that the plaintiff's intestate, at the time he was run over and killed by the train of the defendant, was lying asleep upon its track, *between the rails*. It also shows that he was discovered by the engineer as he lay there, though as an indistinguishable object, in time for him to avoid the injury; but as he was not recognized by the engineer as a *human being* until the train had approached so near that it could not be stopped in time to save him from injury, it is claimed that the defendant is not liable. The

fact still remains that the presence of an unknown object upon the track, directly in the path of the rapidly-moving train, became known to the engineer in time to avoid the injury if he had used proper precautions. The discovery by the engineer of an object lying prone upon the track, which he was unable to distinguish, but to which he might owe some duty, and to which, as it turned out in this case, he owed the duty of protection, was enough to put a prudent man on the alert. It did arrest and fix his attention. He kept his eye upon it; but this could be of little avail, if in the meantime he made no effort to approach it with his train under control, and to be in readiness to discharge his duty to it, whatever that might be. It became his duty upon the discovery upon the track of such prostrate object, over which his train was obliged in its progress to pass, to sound the alarm and get his train under control in case the unknown object should turn out, on nearer approach and closer inspection, to be a human being. He did neither, but permitted the train to rush forward with unabated speed until he finally discovered that the unknown object was a small boy asleep upon the track, when it was too late to save his life.

It appeared in the case of *Seaboard and Roanoke R. R. Co.* v. *Joyner's Adm'r, supra,* that signals were made to warn the engineer that there was danger ahead; but not apprehending their meaning, and mistaking Joyner, who was sitting or lying upon the side of the roadway with his arm *resting upon the rail* and his head lying in the hollow of his arm, for an abandoned tie, he did not check his train until it was too late to avert the accident. The railroad company was held liable.

This case is wholly unlike that of *Tucker's Adm'r* v. *N. & W. R. R. Co., supra,* for there Tucker was not on the track, but was lying wholly *outside of the rails,* without the path of the train, and there was evidence that if he had remained in the position in which he was discovered as an unknown

object, he would not have been struck, or hurt, by the pass-
ing train.    He was not thought to be a human being.    The
track was clear.    There was nothing in that case to cause a
prudent man to think that there was danger ahead.

I do not understand the law to be that a railroad company
is under no obligation to check or stop its train upon the
discovery of an object lying upon its track, which the engi-
neer cannot distinguish, but which yet arrests his attention
and warns him of danger, until he actually ascertains that
the unknown object is a human being, which is, to my mind,
the practical result of the decision made to-day.    The con-
trary principle is, I think, abundantly supported by author-
ity, and accords with the dictates of humanity.

CARDWELL, J., concurs with *Riely, J.*

*Reversed.*