EMIL NOLL, Respondent, v. ST. LOUIS TRANSIT CO., Appellant.

St. Louis Court of Appeals, March 31, 1903.

1. **Railway, Street:** COLLISION WITH TEAM ON TRACK: CONTRIBUTORY NEGLIGENCE: DAMAGES. A driver of a team, which was struck by a street car in the rear, is not necessarily guilty of contributory negligence in driving along the car track, without looking back, where no signal of warning was given as should have been, if he was, or could by the use of ordinary care, have been seen, or if it was too dark to see him.

2. ———: ———: DUTY OF CONDUCTOR: INSTRUCTION. An instruction that declares it the duty of the conductor and motorman in charge of a car to keep a vigilant watch for persons on the track, is erroneous, as imposing a duty on the conductor that he could not perform and perform his other duties.

3. ———: ———: INSTRUCTION. Failure of an instruction in an action for injury to several articles to limit the award for each article to the amount claimed therefor in the petition, is harmless, the proof being that the damages were less than claimed, and the verdict being for a third the sum prayed for.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for appellant.

(1)    The instruction offered at the close of the plaintiff's case in chief, and at the close of all the evidence in the case, should have been given.    The plaintiff drove several blocks in the track, well-knowing the likelihood of a car coming up behind him in the dark, and never looked back to ascertain whether a car was approaching or not.    The car had a headlight upon the same, and was lighted upon the inside.    This must be such negligence upon the part of the plaintiff as contributed to his injury.    Holwerson v. Railroad, 157 Mo. 225; Kirtley v. Railroad, 65 Fed. 391; Railroad v. Mosely, 57 Fed. 921; Sinclair v. Railroad, 133 Mo. 233. (2)    The fact that the car was approaching the rear of the wagon, and that the wagon was covered, does not change the rule.    Nellis on Street Surface Railroads, p. 344.

*Geo. W. Lubke, Jr.*, for respondent.

(1)    Under the contract between defendant and the city, the defendant bound itself to see that its motorman kept a "vigilant watch" for all vehicles either on or approaching its track, and "on the first appearance of danger" to such vehicle, to stop such car "in the shortest time and space possible."    Fath v. Railroad, 105 Mo. 537; Senn v. Railroad, 108 Mo. 152; Jackson v. Railroad, 157 Mo. 621.    (2)    Under the circumstances in evidence, plaintiff had a right to use defendant's track, and to rely on being warned of the approach of its car by the motorman, and the failure of the motorman to sound his gong continuously from the last crossing was continuing negligence on his part which caused the accident.    Conrad Grocer Co. v. Railroad, 89 Mo. App. 391; Schmidt v. Railway, 163 Mo. 645.    (3)    The instruction on the measure of damages is not erroneous, particularly in view of the fact that the verdict was considerably below the amount claimed in the petition. Browning v. Railroad, 124 Mo. 55; Wheeler v. Bowles, 163 Mo. 398; Wood v. Kelly, 82 Mo. App. 598.

GOODE, J.—While plaintiff was driving east-
wardly on Arsenal street in the city of St. Louis, in a
one-horse covered wagon, used for delivery purposes, a
car in charge of defendant's servants ran into the wagon
from the rear, smashed it, injured plaintiff's horse, har-
ness, his clothes and himself. This action was brought
to recover damages for the injuries.

The acts of negligence charged are that the motor-
man did not warn plaintiff of the approach of the car
by sounding the gong, failed to keep a vigilant lookout
for vehicles and persons on the track and ran the car too
rapidly. The vigilant-watch ordinance is pleaded and
a violation alleged in respect to watching for persons on
the track.

Besides a general denial, the answer alleges con-
tributory negligence on the part of plaintiff in driving
in front of the car when by looking he might have seen
and by listening might have heard the approach of the
car and avoided the accident.

Plaintiff's testimony is that at five-thirty or six
o'clock in the morning of November 23, 1901, he drove
on Arsenal street in his delivery wagon from Morgan
Ford road, and, after looking along Arsenal street both
east and west to see if a car was coming and seeing none,
he turned east on said street; that he drove on the car
track because it was muddy on both sides of the street
and driving was easier on the track. After driving
about three blocks, and when he was near Russell place,
he suddenly heard the rumble of a car behind him,
whipped up his horse, turned to the left and got the
horse and left front wheel of the wagon off the track,
when the car struck it, overturning the wagon, throwing
him to the ground and pushing him about twenty feet.
We need not state the extent of his injuries as no point
is made about the amount of the verdict.

There is a marked dispute between the witnesses as
to whether the morning was clear or foggy, and as to

whether at that particular time it was so dark as to prevent one from seeing far ahead, or light enough to see quite a distance. Plaintiff testified that it was a fairly clear morning so that one could see both ways from Morgan Ford road about half a mile. He said there was no fog; that he did not know whether he looked back or not after he got on the track; he kept on until he was within fifteen feet of Russell place; did not know whether he looked back or not, but something told him a car was near.

Henry A. Lowenstein testified that he was a passenger on the car; got on at Bent avenue; that while waiting for the car to come along he saw a white horse and covered wagon driving on the track; that the car came about five minutes after the vehicle passed; that it was a very dark morning, could not say whether he heard the bell ringing or not, but remembered hearing it after the accident. Did not notice any slackening of the speed of the car before the wagon was struck; did not know how fast it was going, for it was dark; but saw the car a long block away before he got on it as it had a headlight; testified that he could not see the wagon very far—not until he got opposite the next lamppost.

Michael Koebel testified he was a passenger on the car and the first he knew of the occurrence was when the car struck the wagon. He heard no bell and observed no slackening of the car until the wagon was struck; could not say how far the car ran after striking the wagon.

Michael Queenan testified he was a passenger on the car, but swore he could not see out of the car because it was so dark; that when the car struck the wagon the motorman stopped the car as quickly as he could and there was a flash like a fuse had burned out; that he did not hear the bell, but he was not paying any attention to the motorman or whether the bell was rung.

Henry Browning, the motorman, testified that it was a very dark, foggy morning; he was running at half

speed, about six or eight miles an hour; the headlight
was burning but would only throw its light fifteen feet
or so ahead as it is more difficult for the rays of a
headlight to penetrate the fog than ordinary darkness;
he first saw the wagon when it was about fifteen feet
distant; reversed the car, struck the wagon and ran a
car length afterwards; that he was looking ahead at the
time and the first he saw of the wagon he was fifteen
feet from it. He sounded the gong as he approached
Russell place and slackened speed so as to take on a
paralyzed man who usually got on at that place. This
man was not on hand that morning, so he went ahead
and hit the wagon east of Russell place, between there
and Gustine avenue. He swore there was nothing he
could do after he saw the wagon except to reverse the
car; that the street lights there are not worth anything
as they are too far apart.

The conductor, Scarborough, testified he was in-
side the car collecting fares; it was a dark, foggy morn-
ing; fog dims the headlight and one can not see so far
ahead in fog as in ordinary darkness; the motorman had
been ringing his bell every twenty or thirty feet and the
first thing that attracted his attention was the reversal
of the car; he next heard the crash of the collision.

Henry B. Eilers swore he was a passenger; the
morning was dark, gloomy and foggy; the bell was ring-
ing; felt a jerk all at once, saw a flash and the collision
occurred.

Willis Woodworth testified he was a passenger;
that the morning was dark and foggy; the headlight was
burning; paid no attention to whether the bell was ring-
ing or not; first had his attention attracted by the crash
of the collision.

August Winter testified that he paid no attention
to whether the bell was ringing or not; saw a flash and
immediately after felt the jar of the collision.

Louise Queenan testified it was a dark and foggy
morning and that one could not see very far; her atten-

tion was drawn by the flash; she was thrown back in her seat; that the crash of the collision came and that the car was running at ordinary speed.

The above is a summary of the evidence in the case outside the proof of damages.

Defendant contends plaintiff ought to have been non-suited because his own testimony shows he drove along the car track for about five minutes without looking back to see if a car was coming. In point of fact plaintiff did not so testify, but said he did not remember whether he looked back or not. Be that as it may, to give warning by sounding the gong was undoubtedly the duty of defendant's motorman if he saw plaintiff's wagon ahead of him on the tracks, or if the morning was so dark or foggy he was unable to see whether a person was on the track or not. According to the testimony for the defense this duty was performed; but there was countervailing evidence the other way for the jury to consider.

If the plaintiff's testimony that it was light enough to see several blocks away is true, the motorman must have observed the wagon long before he struck it unless, instead of keeping a vigilant watch, his attention was directed elsewhere. A case for the jury was made out as to negligence or due care on the part of the motorman.

The facts before us are identical with those of Conrad Grocer Co. v. Railroad, 89 Mo. App. 391, except as to names and dates. In that case, too, the accident occurred early in the morning and the defense was that the driver while traveling on the track did not look back for approaching cars for five minutes. But as there was evidence that no warning was given of the approach of the car which struck his wagon, it was held his failure to look back did not necessarily constitute contributory negligence and render a nonsuit imperative. An instruction was given in said case that it was the duty of both the conductor and motorman in charge of the car to keep a vigilant watch for persons on the track, which

charge has since been condemned as imposing a duty on the conductor that he could not perform and perform his other duties too, and as enlarging the requirement of the vigilant watch ordinance. Gebhardt v. Railroad, 97 Mo. App. 373, 71 S. W. 448. But in the present case the duty of keeping a vigilant watch was imputed by the instructions to the motorman alone; and so the error condemned in the Gebhardt case was avoided.

Neither is this case distinguishable in its material facts from Klockenbrink v. Railroad, 81 Mo. App. 351, or Hutchinson v. Railroad, 88 Mo. App. 375.

The jury were required to find as the prerequisite of a verdict for the plaintiff, that he himself was in the exercise of ordinary care while driving along the car track and whether he was or not was for them to settle. The Klockenbrink case, supra, has been recently affirmed by the Supreme Court to which it was certified on a division of opinion among the judges of this court. That decision leaves no doubt that the issue of the defendant's negligence and the plaintiff's contributory negligence in this cause, were for the jury.

The instructions of the court required of the defendant's motorman no more than ordinary care to avoid hurting the plaintiff after he discovered, or by keeping vigilant watch might have discovered, plaintiff's position of peril.

The instruction on the measure of damages is criticised because it did not limit the award for the injury to plaintiff's wagon, harness, clothes and person to the amount claimed for each item in the petition. The evidence introduced as to the several injuries laid the amount of damages at less than the petition charged and it is reasonable to suppose the jury were governed by the evidence. The verdict was for seven hundred dollars, while the petition prayed for twenty-six hundred and fifty dollars. In view of these facts the omission to limit the award for the different injuries was at most a case of non-direction which does not appear to have re-

sulted in prejudice to the defendant. Price v. Barnard, 70 Mo. App. 175.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.