BUREN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

**St. Louis Court of Appeals, February 2, 1904.**

1. **STREET RAILWAYS: Right to Drive on Track.** One has a right to drive a vehicle on a street railway track, if in so doing he does not unnecessarily interfere with the operation of cars running thereon.

2. ———: ———: **Negligence.** One is not guilty of negligence, as a matter of law, so as to bar recovery for injuries received by collision with a street car, in driving on the track at a rapid speed, in the nighttime when it was very dark.

3. ———: **Duty of Companies: Light on Cars.** It is the duty of a street railway company to have its cars so lighted at night as to be seen at a safe distance by persons using the street, or to give warnings of their approach and so enable such persons to keep out of their way; and one travelling on the street has a right to presume that such duty will be performed.

4. ———: **Contributory Negligence: Jury Question.** In an action for injuries received from a collision with a street car while plaintiff was driving at a rapid rate of speed on the track, at night when it was dark and foggy, where there was evidence tending to show that there was no headlight on the car and no warning sounded of its approach, the question whether he was guilty of negligence which contributed directly to his injury, was for the jury.

Appeal from St. Louis City Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Crawley, Jamison & Collet* for appellant.

Respondent's conduct under the circumstances detailed by himself and his witnesses, in heedlessly driving his team and wagon along defendant's track at a

rapid trot on a dark, misty, foggy night, when he knew he was liable at any moment to be confronted by one of defendant's cars running down grade on slippery rails, was such an act of negligence or utter recklessness as should bar his recovery, notwithstanding his assertion that he did not see or hear the car before the collision. Appellant was entitled to a peremptory instruction, taking the case from the jury. Flutcher v. Railroad, 64 Mo. 484; Harland v. Railroad, 65 Mo. 22; Hallihan v. Railroad, 71 Mo. 113; Purl v. Railroad, 72 Mo. 168; Turner v. Railroad, 74 Mo. 602; Meloy v. Railroad, 84 Mo. 270; Weller v. Railroad, 120 Mo. 635; Bunyan v. Railroad, 127 Mo. 12; Yancey v. Railroad, 93 Mo. 433; Huggert v. Railroad, 134 Mo. 673; McManamee v. Railroad, 135 Mo. 440; Vogg v. Railroad, 138 Mo. 172; Culbertson v. Railroad, 140 Mo. 35; Kreis v. Railroad, 148 Mo. 321; Tanner v. Railroad, 161 Mo. 497; Hook v. Railroad, 162 Mo. 569; Cogan v. Railroad, 73 S. W. 738; Ledwidge v. Transit Co., 73 S. W. 1008; Carrier v. Railroad, 74 S. W. 1002; Zumault v. Railroad, 74 S. W. 1015; Moore v. Railroad, 75 S. W. 672; Barrie v. Transit Co., 76 S. W. 706; Boland v. Kansas City, 32 Mo. App. 8; Harris v. Railroad, 40 Mo. App. 255; Heiter v. Railroad, 53 Mo. App. 391; Gettys v. Transit Co., 103 Mo. 564.

*Daniel Dillon* and *T. F. McDearmon* for respondent.

(1) Plaintiff was not negligent in driving on the track of the defendant in the circumstances under which he did so, as shown by the evidence. In the first place, Florissant avenue was a public street and highway in the city of St. Louis and very much used by the public and it was not negligence *per se* to drive in the tracks of defendant laid in this public street. Plaintiff had the right to the use of the street for his horses and wagon as

well as had defendant for its cars. Oates v. Railroad, 168 Mo. 544; Kolb v. St. Louis Transit Co., 76 S. W. 1053; Degel v. St. Louis Transit Co., 74 S. W. 157; Winters v. Railroad, 99 Mo. 517; Dohlstrom v. Railroad, 108 Mo. 536; Gratiot v. Railroad, 116 Mo. 464; Campbell v. Railroad, 75 S. W. 86; Weller v. Railroad, 164 Mo. 199; Hutchinson v. Railroad, 161 Mo. 254. (2) If the night was so dark that the motorman could not see whether a wagon was on the track ahead of him or not, it was his duty to sound his gong or give other warning of the approach of the car. Noll v. St. Louis Transit Co., 73 S. W. 909. And plaintiff had the right to presume that this precaution would be taken by the men running the cars over that track. Conrad Grocery Co. v. Railroad, 89 Mo. App. 397. (3) Even if plaintiff was guilty of negligence in driving on the track of defendant, yet, under the evidence, plaintiff was entitled to have his case submitted to the jury. The evidence shows clearly that after plaintiff had driven on the track, and was, of course, in a position where he was in danger of being struck by a car of defendant running on the same track, if defendant had used ordinary care, or any care at all in running its car, the collision would not have occurred, and if it had kept a vigilant watch for vehicles on the track or moving towards it, as the ordinance required, it could not have escaped seeing plaintiff's team and wagon on the track in time to have avoided running into them. Morgan v. Railroad, 159 Mo. 262; Klockenbrink v. Railroad, 172 Mo. 678; Hanlon v. Railroad, 104 Mo. 389, 390 and 391; Guenther v. Railroad, 108 Mo. 18; Dohlstrom v. Railroad, 108 Mo. 525; Degal v. St. Louis Transit Co., 74 S. W. 156; Shanks v. Springfield Traction Co., 74 S. W. 386; Barrie v. St. Louis Transit Co., 76 S. W. 706. (4) The night was dark, and there is no doubt that if there had been a headlight, or any light on that car, plaintiff, or one of the men with him, would have seen it in time to have avoided the car. The ordinance absolutely required

that there should be a signal light on the car, and it was negligence *per. se* on the part of defendant to fail to comply with the ordinance in this respect. Murray v. Railroad, 242.

### STATEMENT.

Plaintiff was engaged in the business of selling crackers, cakes, bread, etc., to groceries, saloons, etc., in the city of St. Louis, and had a regular line of customers. He owned a wagon and team with which he made deliveries of goods to his customers. He lived in the northern part of the city on Florissant avenue, and kept his team at his home. In the afternoon of March 26, 1902, he loaded his wagon at a down town bakery, with the intention of delivering the goods to his customers the next morning. He had with him Henry Herbert, his helper, and on his way home from the bakery picked up Louis Wagoner, who lived near him. There was a saloon on Florissant avenue, from six to eight hundred feet south of plaintiff's home; when plaintiff arrived at the saloon, Herbert, Wagoner and himself stopped there for fifteen or twenty minutes and drank one or two rounds of beer. The three then got on the seat of the wagon, plaintiff on the right, Wagoner in the middle and Herbert on the left. Plaintiff did the driving. This was about 7:30 o'clock in the evening; it was very dark, and some of the witnesses say foggy and drizzling rain.

The evidence is, that on Florissant avenue where plaintiff was driving, the defendant has two railway tracks. The one on the east side of the street is laid with T rails so wagons can not drive on the track. East of this track the street was not improved and was not in use at that time by teamsters, so the only space on the street that could be used by wagons and teams was the west track of the railway and that portion of the street west of the west track which was improved. The

evidence is that wagons travelling south were entitled to the right of way on that portion of the street west of the west track.    There is also evidence that this part of the street was being cleaned at the time and there were piles of mud and dirt in it.    Plaintiff's evidence is that when he got on his wagon at the saloon, he drove eastwardly until he came to the west railway track; that he then turned due north to drive to his home with the wheels on the east side of his wagon in the track and one or both of his horses between the rails.    That he was driving north in a fast trot and when he had proceeded two hundred and fifty or three hundred feet from the saloon, his wagon was struck by something running south, he did not know what, he was thrown to the ground with such force as to render him unconscious and was severely injured.    The evidence is that the wagon and team met a south bound car on the west track and collided with the car, in consequence of which, one of the horses was killed, the wagon smashed to pieces, its contents broken up and scattered, and plaintiff thrown to the ground; that Herbert and Wagoner were thrown on the front vestibule of the car, and that the car proceeded some fifty or sixty feet after it had collided with the wagon and team.    Plaintiff testified that he looked and listened for a car but he neither saw nor heard one coming.    Herbert and Wagoner testified that they were unconscious of the approach or presence of the car until it struck the team and they found themselves landed on the vestibule of the car.    The three occupants of the wagon testified that there was no light in the car; that there was no headlight and the gong or bell was not sounded, nor any warning whatever given of its approach.    There was considerable down grade to the south at the place of the collision; but H. C. Montgomery, an ex-motorman who had had something over a month's experience as a motorman, testified that a car running at a speed of eight miles per hour could have been stopped on that grade in from fifty-five to sixty

feet with the brakes, and in thirty-five feet with the brakes and reverse. There was evidence of the value of the horse killed, the damage to the wagon, and of the extent and character of plaintiff's injury, of his loss of time and of his earning capacity.

Defendant's motorman, Howard Johnson, testified in substance, that the accident occurred about three hundred feet south of Marcus avenue; the car going down grade; that the night was very dark and foggy and misting rain; that there were lights in the car over the vestibule, visible to persons on the outside. That he first saw the wagon about thirty feet in front of the car, ''turn in right across in front of me, met me full in the face;'' that the car and team of horses were going at about the same speed, about eight miles an hour, the horses being in a gallop. That he did everything in his power to stop the car and prevent the collision, but was unable to do so; that he rang the gong just before plaintiff turned in on the track.

James Darling, the conductor, testified in substance that the electric lights were lighted in the car, and there was an overhead glass transom; that there was a head light on top which was lighted when they left the end of the road about five minutes before the accident, and that there was an illuminated sign outside the car. That a man coming from the south could see the car two or three hundred feet. That he did not see the accident, but from the looks of the ground supposed the car ran about ten or fifteen feet after the collision. That after the collision the car was standing on the rails with the trolley on. Witness supposed the car was running about eight or ten miles an hour.

Otto G. Kanick testified that he lived about three hundred feet from where the accident happened on Florissant avenue, and saw the collision. That he was standing about four hundred feet south of where it occurred on the street crossing, waiting for a car. That he was standing between the saloon and the place of the

accident.   That he saw these parties come out of the saloon; that they passed him and he had to get out of their way or they would have run over him.   That they were driving fast, and the night was very wet and dark. That he was standing on the crossing and saw the car as soon as it came to the top of Marcus avenue, about a thousand feet away; that he saw the light of the car a thousand feet away and saw the headlight immediately before it struck the wagon; that there was nothing to obstruct a man's view sitting on top of a wagon.   That he saw the car distinctly.   That the men were driving fast, and when he saw them go on the track and the car coming he was watching for a collision, because the car was coming on the very track the wagon went up on.

At the close of plaintiff's evidence and again at the close of all the evidence, defendant offered instructions that under the evidence plaintiff was not entitled to recover.   These instructions were denied.   Others were were given submitting the issues to the jury who returned a verdict for plaintiff signed by ten of the jurors, assessing his damages at five hundred dollars.   Defendant filed a motion for new trial which was overruled by the court and judgment entered for plaintiff on the verdict for five hundred dollars.   Defendant appealed.

BLAND, P. J. (after stating the facts as above.) — The only error discussed in the brief of appellant's counsel is the refusal of the court to grant the instructions offered by it at the close of all the evidence, that "under the law and the evidence plaintiff is not entitled to recover."

Plaintiff offered substantial evidence tending to prove that the defendant was running its car over a travelled street on a dark night without any headlight or other light by which it could be seen, and without sounding the gong to notify persons, who might be on the track or so near thereto as to be struck by a passing car, of its approach.   If these facts be true, then the

defendant's motorman and conductor were guilty of
gross negligence, and the only theory upon which the
instructions in the nature of a demurrer to the evidence
should have been given, was that all the evidence shows
conclusively that plaintiff was guilty of negligence
which directly contributed to his injury. The plaintiff
had a right to drive on the defendant's railway track,
if in doing so he did not unnecessarily interfere with the
operation of cars on the track. Oates v. Railway, 168 Mo.
l. c. 544; Degel v. St. Louis Transit Co., 74 S. W. (Mo.
App.) l. c. 157; Kolb v. St. Louis Transit Co., 76 S. W.
(Mo. App.) 1053. Negligence, therefore, can not be
imputed to him from the mere fact that he was driving
on the track, nor do we think that a court can, as a mat-
ter of law, say that he was guilty of such negligence as
to bar recovery from the fact that he drove on the track
at a rapid speed, in the nighttime when it was very
dark. It was the duty of the defendant to have its car
so lighted as to be seen at a safe distance by persons
using the street or to sound the gong, or give some
warning of its approach to enable persons to keep out
of its way. Noll v. St. Louis Transit Co., 73 S. W. 907;
Klockenbrink v. Railway, 172 Mo. l. c. 689; Gratiot v.
Railway, 116 Mo. l. c. 464; Dahlstrom v. Railway, 108
Mo. l. c. 536; Conrad Grocer Co. v. Railroad, 89 Mo.
App. l. c. 397. Plaintiff had a right to rely on the per-
formance of this duty by the railway company and to
assume that if a car was approaching him from the
north, it would have a headlight by which it could be
seen, or the gong would be sounded to give warning of
its approach in time to allow him to move off the track
in safety. We do not hold that the evidence does not
tend to show that plaintiff was guilty of negligence that
directly contributed to his injury—in fact we think the
preponderance of the evidence is that way—but it is
not all that way and when there is evidence pro and con
on an issue of fact on trial, it is for the jury to pass
upon its probative force, and when they have done so

and the trial court has approved their finding by over-ruling the motion of the losing party to set aside the verdict, that issue of fact is not open to review by an appellate court.

The judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.