𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

WASHINGTON AND OLD DOMINION RAILWAY V. JACKSON'S
ADMINISTRATOR.

June 10, 1915.

1. WITNESSES—*Contradicting One's Own Witness—Proving Different State of Facts.*—A party producing a witness may prove the truth of material facts by any other competent evidence, even though the effect of such evidence is to directly contradict his own witness. A party is not bound by all the statements of a witness called by him, if adverse, even though no other witnesses are called against him. He may, on a material point, be contradicted by the physical facts proved in the case. The party calling a witness may rely upon a part of the testimony of such witness, although in other parts the witness may deny the facts sought to be proved.

2. DEMURRER TO EVIDENCE—*Inferences Favorable to Demurree.*— Where several inferences may be drawn from the evidence differing in degree of probability, on a demurrer to the evidence, the court must adopt those most favorable to the demurree, unless they are strained, forced or contrary to reason.

3. RAILROADS—*Trespassers—Duty to—Case at Bar.*—While a railroad company does not owe a trespasser that prudent circumspection which foresees and forestalls danger, a trespasser injured on the track of such company is entitled to recover notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was proximately caused by the omission of the company after having such notice of the trespasser's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury. It is not necessary that the company should actually know the danger to which the trespasser is exposed. It is enough if it has sufficient notice or belief to put a prudent man on the alert, and does not take such precautions as a prudent man would take under similar notice or belief. In the case at bar, a trespasser on an interurban railway was first seen by the motorman four hundred and fifty yards off

on a straight track, but believing him to be an inanimate object no further lookout was kept or attention paid to him until he was run over and killed.

Error to a judgment of the Circuit Court of Fairfax county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*C. E. Nichol* and *W. J. Lambert,* for the plaintiff in error.

*C. V. Ford* and *Wilson M. Farr,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

Upon a demurrer to the evidence judgment was rendered for the defendant in error, plaintiff below, in an action to recover damages for the death of his intestate, Frank Jackson, which was attributed to the wrongful act of the defendant, the Washington and Old Dominion Railway.

The controlling question submitted for our determination is the sufficiency of the evidence to support the judgment.

The testimony shows that plaintiff's intestate was a colored boy sixteen years old, who at the time he was killed was lying, presumably asleep, on the right-hand rail of the defendant's track going west, or between the rails, within 800 feet of a station called "Carvil," near the point where a much used foot path over the track turns off in the direction of his home. About ten o'clock on the night of the accident, car No. 74 was running as an extra, not on schedule time and without passengers, being operated by one Johnson as motorman.

The car was well equipped with approved modern automatic air brakes and an electric head-light in good condition. The motorman's position was in the front part of the car directly over the right-hand rail. He was introduced by the plaintiff, and testified that while going up a slight grade approaching Carvil he discovered an object (shown to have been 450 feet in front of the car) lying along the track at the ends of the ties, which he took to be a bunch of rags or an old tie; that he only glanced at the object for half a second and then directed his gaze up the track, which at that point was straight for a mile and a half. The car was drifting, with the current off, at the rate of twenty or twenty-one miles an hour and could have been stopped in 100 feet. He did not blow the whistle or sound the gong when he saw the object, or take any further account of it after the passing glance, but proceeded on his way without lessening speed, and did not know of the presence of the object on the track until he felt the jar of the collision, when he backed the car and discovered the mutilated remains of the boy. Notwithstanding the statement of the witness that the object (which proved to be Frank Jackson) was outside the rails, the physical facts demonstrated that he was either lying on the right-hand rail, or on the track between the rails. His blood and mangled flesh were besmeared on the front of the right side of the cow-catcher, and the gray trousers which he wore showed five greasy prints or marks between the knee and hip corresponding with the bars of the pilot. Moreover, as the result of the impact his injuries were of a character which rendered it physically impossible for him to have been lying outside the ends of the ties where the testimony of the motorman placed him. Reliance by the plaintiff on these physical facts does not transgress the general rule which forbids a party to impeach his own witness. Va.

In addition to the numerous authorities cited in the Code, sec. 3351; *Gordon* v. *Funkhouser*, 100 Va. 695, 42 S.

E. 677; *Ferguson* v. *Daughtrey,* 94 Va. 308, 26 S. E. 822; *N. & W. Ry. Co.* v. *Birchfield,* 105 Va. 809, 54 S. E. 879.

In 3 Jones on the Law of Evidence, sec. 860, it is said: "The general rule that one cannot impeach his own witness must not be understood to imply that the party is bound to accept such testimony as correct. On the contrary, it is very clear that one producing a witness may prove the truth of material facts by any other competent evidence, even though the effect of such testimony is to directly contradict his own witness. A party is not bound by all the statements of a witness called by him, if adverse, even though no other witnesses are called to contradict him; the party may rely on the part of such testimony although in other parts the witness denies the facts sought to be proved. It has been well said that if the other rule prevailed, 'every one would be at the mercy of his own witness, and if the first witness sworn should swear against him, he would lose the testimony of all the rest. This would be a perversion of justice.'" Citing *Snell* v. *Gregory,* 37 Mich. 500.

It is clear that upon the physical facts adverted to a jury might well have found that at the time of the accident Jackson was lying either on the rail or between the rails; and if that be true, then the court, upon a demurrer to the evidence, must so find. *Perkins* v. *Southern Ry. Co., Ante,* p. 351 85 S. E. 401, and cases cited.

It is likewise settled law that where "several inferences may be drawn from the evidence differing in degrees of probability, the court must adopt those most favorable to the demurree, unless they be strained, forced, or contrary to reason." *Horner* v. *Speed,* 2 Pat. & H. 616; Burks' Pl. & Pr. 487, *et seq.,* where the subject is discussed and authorities assembled.

Upon this principle, Jackson must be held to have been lying in front of the car, and, when first seen by the motor-

man was 450 feet away in a space illumined by a powerful electric head-light. Indeed, so bright was that light that a small animal would have been discernible at a distance of 1,000 feet; and on the occasion of the inquest, held shortly after the accident, the coroner at a distance of thirty feet availed of the light to do the necessary reading and writing and examination of the injuries to the person of the deceased, incident to the investigation.

While the doctrine is well settled that a railroad company does not owe to a trespasser on its track that "prudent circumspection which foresees and forestalls danger," yet this court in several cases has quoted with approval the following statement of the law from Shearman and Redfield on the Law of Negligence (4th ed.), sec. 99: "The plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was proximately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know of the danger to which plaintiff is exposed. It is enough if he has sufficient notice or belief to put a pruent man on the alert, and he does not take such precautions as a prudent man would take under similar notice or belief." *Seaboard and Roanoke R. Co.* v. *Joyner's Admr.*, 92 Va. 354, 23 S. E. 773; *Tucker's Admr.* v. *N. & W. Ry. Co.*, 92 Va. 549, 24 S. E. 229; *N. & W. Ry. Co.* v. *Dunnaway's Admr.*, 93 Va. 29, 24 S. E. 698.

In decisions of this court where liability was denied, it appeared that those in charge of the train, on seeing an unknown object on the track, invariably have kept their attention fixed upon it until its character was determined, and then, if discovered to be a human being, exercised ordinary care to avoid injury. In this case the motorman con-

fessedly only bestowed upon the object a passing glance. Under the evidence, a jury might well have been warranted in finding that ordinary vigilance on his part would have disclosed that the object was a human being in ample time for him to have stopped the car and avoided the accident.

For these reasons, the judgment of the circuit court should be affirmed.

*Affirmed.*