Syllabus.

## Wytheville.

## VIRGINIA RAILWAY AND POWER COMPANY v. WINSTEAD'S ADMINISTRATOR.

### June 8, 1916.

#### Absent, Cardwell, J.

1. NEGLIGENCE—*Breach of Legal Duty.*—Negligence is the violation of a legal duty which one person owes to another to take care for the safety of the person or property of such other. Where there is no legal duty to take care, there can be no actionable negligence.

2. STREET RAILWAYS—*Duty to Passengers on Street—Persons Lying on Track—Prevision—Trespassers.*—It is the duty of a street railway company to use reasonable care to equip and operate its cars on the streets of a city, with a view to discovering, and avoiding injuries to, persons using the streets in the usual and ordinary way. But there is no duty of prevision owing by it to persons who, from intoxication or other cause, lie down in practical disguise on or near its track. As to such persons, the only duty of the street car company is to use reasonable care not to injure them after their peril has been discovered, or would have been discovered by due care in the use of such facilities and equipment as were required by its duty, *not to such persons*, but to persons using the streets in some such way as to be reasonably expected. A person who, while intoxicated, lies down on or near the track in a public street is not entitled to any higher rights than if he were in a strict technical sense a trespasser.

3. STREET RAILWAYS—*Lights—Lookout—Sleeping on Track.*—To run a street car without lights, or with lights but with no lookout for persons on the street would be evidence of wanton and wilful negligence, for which even a trespasser might maintain an action, but this rule has no application to the case of one using the track as a sleeping ground. Such a one surrenders his rights as a traveler on the street.

4. STREET RAILWAYS—*Over-crowded Cars—Negligence—Proof.*—If the plaintiff intends to rely upon the crowded condition of a street car as a ground of negligence it is incumbent upon him to establish that fact by evidence. A verdict founded upon the meager facts appearing in the case at bar would contravene the rule that verdicts cannot be rested upon speculation and conjecture.

Error to a judgment of the Circuit Court of the city of Norfolk, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*W. H. Venable, H. W. Anderson* and *A. D. Christian,* for the plaintiff in error.

*James H. Corbitt* and *Jeffries & Jeffries,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This action was brought to recover damages for the death of W. E. Winstead, which was alleged to have resulted from the negligence of the defendant, Virginia Railway and Power Company. There was a verdict for the plaintiff, and a judgment thereon which is the subject of the present inquiry.

The defendant company operates a street railway system in the city of Norfolk. On the night of the accident one of its cars, which was running eastwardly on Brown avenue, stopped at a street crossing, and, renewing its journey eastwardly, had proceeded fifteen or twenty feet beyond the crossing when the motorman and two passengers standing on the front platform saw laying by the track, some forty of fifty feet ahead, an object which appeard to be a piece of paper or some old trash. When within a distance variously estimated by the witnesses at from eight to twenty feet of the object, they discovered that it was a man, and the motorman then made the best stop he could,

but the car struck the man's head and came to rest about four or five feet beyond. This man was Winstead. He had been addicted to sprees, and on this occasion had a quantity of whiskey with him. The only reasonable explanation of his presence by the track was that he was in a drunken condition.

The car was equipped with two headlights, one an incandescent and the other an arc lamp, which were shown to be of standard make and in general use in Norfolk and other cities. There was no evidence to show that these lights were not adjusted and burning in the usual manner. That portion of Brown avenue on which the accident occurred was poorly lighted, and comparatively speaking was quite dark. There was a city arc light at the street crossing mentioned above, but its effect was interfered with by shadows from intervening trees. Such further facts as are material will appear in connection with our discussion of the charges of negligence upon which the plaintiff below based his claim for a recovery.

The first of these charges is that the defendant company failed to have a proper headlight, properly adjusted, on the car. There is, we think, no difficulty with this branch of the case. "An essential ingredient of any conception of negligence is that it involves the *violation of a legal duty*, which one person owes to another—the *duty to take care* for the safety of the person or property of the other; and the converse proposition is that, where there is no legal duty to exercise care, there can be no actionable negligence." 1 Thompson on Neg., sec. 3, p. 4; 2 Elliott on Roads and Streets, sec. 1138 and notes; *Id.*, sec. 1139. There are authorities which seem to hold that independent of statute or municipal ordinance, no duty rests upon street railway companies to provide lights or signals

on their cars at night for any other purpose than to disclose their presence and approach to other users of the streets in order that the latter may keep off of their tracks. See for example *Roscher* v. *Railway Co.*, 90 Mich. 413, 416, 51 N. W. 463, 30 Am. St. Rep. 447; *Buren* v. *St. Louis Transit Co.*, 104 Mo. App. 224, 231, 78 S. W. 680. We cannot assent to this view, and are of opinion that it was the duty of the defendant company to use reasonable care to equip and operate its cars on the streets of the city, with a view to discovering, and avoiding injuries to, persons using the streets in the usual and ordinary way. We are further of opinion, however, that there was no duty of prevision owing by it to persons who might, because intoxicated or for any other reason, lie down in practical disguise on or near the track. As to such persons, the only duty of a street car company is to use reasonable care not to injure them after their peril has been discovered, or would have been discovered by due care in the use of such facilities and equipment as were required by their duty, *not to such persons*, but to persons using the streets in some such way as was to be reasonably expected. When Winstead became intoxicated and laid down in dangerous proximity to the street car track, he placed himself out of the class of persons to whom the defendant company owed any duty of prevision, and brought his case within the reason of the decisions of this court in *Tucker* v. *N. & W. R. Co.*, 92 Va. 549, 24 S. E. 229, and *N. & W. R. Co.* v. *Dunnaway*, 93 Va. 29, 24 S. E. 698. In the recent case of *Washington and O. D. Ry. Co.* v. *Jackson*, 117 Va. 636, 85 S. E. 496, a recovery was sustained, not because there was any duty of prevision owing to the decedent, but because after sufficient notice of his danger the defendant did not exercise reasonable care.

We are not unmindful of the difference between the rights of persons on a street car track or railroad track in a public street and their rights upon such tracks on a right of way owned by the company.   It is unquestionably true, as stated in 2 Elliott on Roads and Streets, sec. 965, that the use of a street in the ordinary way can never make one a trespasser; but we are of opinion that where one is situated as was the plaintiff's intestate in this case, he is not entitled to any higher rights than if he were in a strict technical sense a trespasser.

To run a street car without lights, or to run it with lights but with no lookout for persons on the street, would, of course, be evidence of wanton and wilful negligence, for which even a trespasser might maintain an action; but that is not this case.

In the present case the evidence leaves no room for reasonable men to differ upon the statement that if Winstead (or any other man or child) had been standing, or walking, on or near the track where he was struck, or making any other legitimate and customary use of the street at that point, the headlights would have been entirely sufficient to disclose the fact from the point at which the object was first seen, and in ample time for the accident to have been averted. Lying as he was, however, wholly outside of the rails, he at first sight presented the appearance of a piece of paper or a bundle of trash, threatening no harm to the car or its occupants, and suggesting no probability of harm or damage to it from the car.   The evidence shows that the motorman was looking ahead and would have seen a man using the track in the usual way in time to have done whatever prudence might have dictated for his protection, and that after the car was close enough to disclose the probability that

the object was a human being, the motorman did all he could to stop in time to save him.   There was no duty upon him to slacken his speed sooner than he did.   *Tucker* v. *N. & W. R. Co.*, 92 Va. 549, 553, 24 S. E. 229; *N. & W. R. Co.* v. *Dunnaway*, 93 Va. 29, 40, 24 S. E. 698.

In the *Dunnaway Case* the fact is emphasized that the railway company had the exclusive right to the uninterrupted enjoyment of their tracks at the point of the accident.   In this case the defendant company did not have any such exclusive right, but it did have a superior right between crossings, even as to the customary and proper use of the street by others (36 Cyc. 1491, and cases cited in note 96; 2 Elliott on Roads and Streets, sec. 961); and it requires no argument or authority to show that no one has any right to use the streets on or off of the track as a sleeping place.   When he does so he becomes a wrongdoer against the entire public, and he surrenders his relation and rights as a traveler on the street.   As illustrative of this principle see Lile's Notes on Mun. Corp. (3rd ed.), pp. 60-61, and cases cited.

The next charge of negligence as contained in the declaration was that the defendant company failed to keep a proper lookout for persons who might be upon its tracks.   There was no proof to sustain this charge —in fact, it was affirmatively disproved—and the court properly instructed the jury to disregard it.

The only remaining allegation of negligence was that the car was allowed to be overcrowded so that it could not be as easily controlled as if it had been carrying a reasonable load of passengers.   The evidence offered to support this charge was the statement of one witness that the car "was crowded," and of another that the seating capacity of the car was thirty-six, the total

number of persons on the car sixty-five, that the aisle was full, and that "a few more but not many more" could have been taken on.   Upon this evidence we are asked to apply to this case the language of the opinion in *Richmond Railway and Light Co.* v. *Garthwright*, 92 Va. 627, 633, 24 S. E. 267, 269 (32 L. R. A. 220, 53 Am. St. Rep. 839), where it is said to be "self-evident that the heavier the load the more unmanageable the car, and the greater the distance required within which to stop it."   This language must, of course, be construed in the light of the facts to which it related.   It was shown in that case that the car was a small and light one, about twenty-two feet long, weighing about 15,000 pounds, and having a seating capacity of twenty-two persons; that it was crowded "to its utmost capacity, and that both platforms, and even the steps were thronged," the number of passengers being variously estimated at from sixty to eighty, and so "jamed together that the conductor was unable to collect the fare from half of them, and the motorman unable, as testified to by some of the witnesses, to have free command of his brake."   The evidence further showed the distance in which the car ought to have been stopped under normal conditions, and that it failed to stop within anything like that distance at the time of Garthwright's injury.   In the instant case, on the contrary, the evidence is that the car made a good quick stop within a very short distance.   There were only two passengers on the platform.   We are told nothing of the size or weight of the car, except a statement in the argument of counsel for the defendant company, which is neither admitted nor denied by counsel for the plaintiff, that the car was forty feet long and weighed 40,000 pounds.   It was a part of the plaintiff's case, if he intended to

rely upon the alleged overcrowding of the car, to show some further facts as were shown in the *Garthwright Case*.    To permit a jury to find, upon the meagre facts appearing in this record, that the crowd on the car was such as to convict the defendant of negligence, would contravene the rule that verdicts cannot be rested upon speculation and conjecture.

There were other questions raised in this case, but they are incidental and subordinate to those which we have discussed and which, in our opinion, must control the case unless upon a new trial the evidence should be materially different from that now before us.

The motion to set aside the verdict should have prevailed, and the judgment must be reversed and the cause remanded for a new trial, to be had, if plaintiff shall be so advised, in conformity with the views herein expressed.

*Reversed.*