SOUTHERN RAILWAY COMPANY V. WILEY.

March 9, 1911.

1. NEGLIGENCE — *Infants* — *Presumption* — *Imputed Negligence.*—A child two and a half years of age is presumed to be incapable of contributory negligence, and the negligence of its father and mother in not keeping it away from a place of danger cannot be imputed to the child, in an action brought by the child.

2. RAILROADS—*Use of Tracks as Passway*—*Acquiescence*—*Duty of Lookout.*—Where a railroad company knows that its tracks at a given point have long been used as a passway by the inhabitants of a village and the country around, and they are still so used with its knowledge and acquiescence, it is the duty of the company to keep a reasonable lookout to discover and not to injure anyone whom it may reasonably expect to be on its tracks at that point, and for an injury resulting from a failure so to do the company is liable.

3. RAILROADS—*Personal Injury*—*Negligence*—*Case at Bar.*—In the case at bar a child two and a half years old was struck and injured by a railroad engine, and the sole question was whether or not, upon the evidence, the jury had the right to infer that the engineer running the engine did in fact see him in time to have avoided the injury. Upon a review of the testimony it is *held:* The jury might with propriety have found, upon a review of all the evidence before it, that the engineer in fact discovered the position of the child in time to have avoided the injury inflicted upon him.

Error to a judgment of the Circuit Court of Halifax county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The following instructions were given by the court on the motion of the plaintiff:

(1) "The court instructs the jury that if they believe from the evidence that on January 9, 1909, Ralph Wiley, the plaintiff was about two and one-half years of age, then he is presumed to have been incapable of contributory negligence. And the court further instructs the jury that though they believe from the evidence that the father and mother of Ralph Wiley (or either of them) were guilty of negligence in not keeping said Ralph Wiley from going on the defendant's tracks, such negligence of the father or mother, or both of them, cannot be imputed to said Ralph Wiley."

(2) "The court instructs the jury that if from the evidence in the case they believe that with the knowledge of the defendant its track at the point of the alleged accident has been for a number of years prior to and up to the time of said accident, constantly used by such a number of the inhabitants of the village of Scottsburg and other people, as a walkway and passway, and that the defendant might reasonably have expected that some of such inhabitants or people might be then and there upon its track at the said point, then the defendant owed the duty of taking reasonable care to discover and not to injure any such person whom it might reasonably expect to be on its track at that point; and if the jury believe from the evidence in the case that the servant of the defendant in charge of its engine at the time of the injury complained of could by the exercise of reasonable care, under the circumstances surrounding him at the time, have discovered the danger of the infant plaintiff in time to have avoided injuring him, but that he failed to exercise such reasonable care under the circumstances surrounding him at the time, and as the result of such failure ran the engine against, and upon the infant plaintiff, and thereby inflicted the injuries complained of, the defendant is liable and the jury should find for the plaintiff."

(3) "The court instructs the jury that should they believe from the evidence that the defendant's track at the point of the accident had not been used by a large number of people as a walkway and passway, with the knowledge of the defendant, still if they do believe from the evidence that the engineer of the defendant company in charge of its engine at the time of the injury complained of, discovered the infant plaintiff in this case on the track in front of the said engine in time to have stopped the engine and avoided the said injury, but that after such discovery, negligently and carelessly failed to take any precaution to stop said engine but ran the same against and over him, then the defendant is liable and the jury must find for the plaintiff."

The following instructions were given by the court on the motion of the defendant:

(A) "The court instructs the jury that the burden of proving negligence is upon the plaintiff, and that negligence must be proved by affirmative evidence, which must show more than a probability of a negligent act, that a verdict cannot be founded upon mere conjecture, and that there must be affirmative and preponderating proof that the injury to Ralph Wiley would not have occurred except for the negligence of the Southern Railway Company or its servants."

(B) "The court instructs the jury that in order for the plaintiff to recover he must show that the injury to Ralph Wiley was the result of some act of negligence on the part of the defendant company or its servants. The mere fact of an injury is not enough to warrant a recovery in this action without proof of the negligence on the part of the company, its agents or servants, and the burden to establish such negligence is upon the plaintiff."

(E) "The court instructs the jury that if they believe from the evidence that the point at which Ralph Wiley was injured was not in a public highway or street crossing, that the defendant railway company only owed him the duty of using reasonable care to discover the said Ralph Wiley and not to discover him at that point; and if the jury believe from the evidence that the servants of the defendant company in charge of its engine and cars could not in the exercise of reasonable care under the circumstances and conditions surrounding them at the time have known of the danger to the said Ralph Wiley in time to have avoided the accident, they must find for the defendant in this action."

(F) "The court instructs the jury that if they believe from the evidence that at the time Ralph Wiley was injured the fireman on the train which injured him was making up his fire and in the discharge of his usual duty, that the engineer in charge of the engine attached to said train was in proper position and looking ahead, and in discharge of his duty, that the time at which said Ralph Wiley was injured was at a time when the railway company, its servants and agents, had no reason to expect that said Ralph Wiley would be on its tracks, that owing to the darkness at that time and the position in which said Ralph Wiley was in, the engineer on said train did not see him, then the jury must find for the defendant in this action."

The following instructions offered by the defendant were refused by the court:

(C) "The court instructs the jury that if they believe from the evidence that the points on the tracks of the Southern Railway Company at which Ralph Wiley was injured was not a street or highway crossing, then said company owed the said Ralph Wiley no duty to keep a lookout to avoid injuring him, but only owed him the duty

of using due care to avoid injuring him after it, or its servants discovered his danger, and if the jury believe from the evidence that the agents and servants of the Southern Railway Company in charge of the train which caused his injury did not see said Ralph Wiley in time to have avoided the injury to him, they must find for the defendant in this action."

(D) "The court instructs the jury that if they believe from the evidence that the point at which the said Ralph Wiley was struck and injured by a train of the Southern Railway Company was on its tracks and on its property, that said Ralph Wiley had no business with the said railway at said place at that time, and that said point was not a street or highway crossing, and that he was not there with the consent or permission of said company, then the said company owed to said Ralph Wiley no duty to keep a lookout to avoid injuring him, but it only owed him the duty to use due care to avoid injuring him after it discovered his danger; and if the jury believe from the evidence that the agents and servants of the Southern Railway Company in charge of the train which caused his injury did not see said Ralph Wiley in time to have avoided injuring him, then they must find for the defendant in this action."

*William Leigh,* for the plaintiff in error.

*Lee & Kemp, James S. Easley* and *M. B. Booker,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is an action brought to recover damages for an injury by the Southern Railway Company to Ralph Wiley, an infant about two and a half years old.

The facts are as follows: Train No. 14 on the Richmond

and Danville division of the Southern Railway, moving north from Danville to Richmond, reached Scottsburg, a station on the road, at 5:56 o'clock P. M. on the evening of January 9, 1909, on schedule time. The sun set on that day at nine minutes after 5 o'clock, and there is some evidence tending to show that the evening was cloudy, misty and dark. The train stopped at Scottsburg for about a minute or a minute and a half to discharge and take on passengers. It then proceeded on its way, and, shortly after it had passed, Ralph Wiley was found on or near the track 320 feet north of the station and 240 feet north of the point where the engine had stopped, with his left arm crushed just at the elbow. No one was with him except his little sister, about four years of age, who was found a little way off on the east side of the railway among some railroad cross-ties. These children lived in a cabin near the right of way of the railroad on the west side, nearly opposite the point where the injury occurred. Vaughan, a witness for the plaintiff, testified that on the evening of the accident he was a passenger on the train, and got off at Scottsburg on the right-hand side next to the passenger station; that he walked to the corner of the station and was standing in a path at the end of the station building about six feet from the train, when he saw Ralph Wiley just on the outside of the right-hand rail of the main line; that the child was down with his hand on the rail and appeared to be trying to get over it; that he was down on his hands and knees, and he saw another child standing eight or ten feet from him to the right; that the engine was then standing still; that he made no outcry, and did not call the attention of the engineer to the position of the child, but stood and watched to see if the engineer would stop his train; and that he looked until the train was nearly upon him, and then turned and went home.

The engineer swore that he did not see the child; that

he was looking ahead all the time after he left the station at Scottsburg; and that he saw neither of the children. It is shown that Scottsburg is a village of from 250 to 300 inhabitants, and that they and the residents of the county in the neighborhood use the railway tracks as a walkway, but that the tracks are very little used after dark.

When the evidence was concluded, the plaintiff and defendant asked for a number of instructions. The court granted the instructions asked for by the plaintiff, numbered 1, 2 and 3, and to this action of the court the defendant excepted. The defendant asked for six instructions, marked "A," "B," "C," "D," "E," and "F"; but the court refused to grant "C" and "D," and the defendant again excepted.

There was a verdict and judgment in favor of the plaintiff for $3,000, and the case is before us upon a writ of error.

We think instructions Nos. 1 and 2 propound familiar principles of law, and do not require discussion.

Instruction "C" asked for by plaintiff in error leaves wholly out of view the fact that the tracks of the Southern Railway Company at the point of the accident had long been used as a passway by the inhabitants of the village and country around, with the knowledge and acquiescence of the railway company. That these facts imposed upon the company the duty of keeping a reasonable lookout for persons upon the tracks, has been so frequently decided that it may be deemed the established law of this State. The same objection applies to instruction "D," and both were properly refused by the circuit court.

The only point of difficulty arises upon instruction No. 3, given at the instance of the defendant in error. It proceeds upon the theory that the track at the point of the accident had not been used by the people of that vicinity as a walk and passway with the knowledge of the defend-

ant, and then instructs the jury that if they believe from the evidence that the engineer of the defendant company in charge of its engine at the time of the injury complained of, discovered the infant plaintiff on the track in front of the engine in time to have stopped the engine and avoided the injury, but that after such discovery he negligently and carelessly failed to take any precaution to stop the engine but ran the same over him, then the defendant is liable and the jury must find for the plaintiff.

It is admitted that as a proposition of law this instruction is correct; but the contention of the plaintiff in error is that there is no evidence to support it.

The testimony of Vaughan is that he plainly saw the child, although he was nearly one hundred feet further from the child than the engineer; that the engineer was looking in the direction of the child, a fact which the engineer himself admits in his testimony; and it is further shown that at the moment the engineer was not engaged in the performance of any other duty; that the train, at the time it struck the child, was moving so slowly that it could have been stopped within the space of ten feet; and the sole question is whether upon these facts a jury had the right to infer, not that the engineer should have seen the child, but that he did in point of fact see it in time to have avoided the accident.

There is no suggestion that the eyesight of the engineer was not as good as that of the average man—the presumption, indeed, is that it was better than the average, for engineers are inspected and tested with respect to their vision. He was under no disadvantage of position; on the contrary, the advantage of position was with him, as he was the nearer of the two to the child.

In the case of *N. & W. Ry. Co.* v. *Crowe's Admx.*, 110 Va. 798, 67 S. E. 518, an analogous state of facts appears. In that case a witness testified that neither he

nor the deceased saw or heard the approach of a train, although neither sight nor sound were obstructed, and this court said, that to believe his statement "would under the circumstances narrated be to accept as true that which in the nature of things could not be true." A number of cases are there reviewed, and the law as stated in Moore on Facts, at section 160, is approved, which says: "Courts are not so deaf to the voice of nature or so blind to the laws of physics that every utterance of a witness in derogation of these laws will be treated as testimony of probative value because of its utterance. A court will treat that as unsaid by a witness which in the very nature of things could not be as said."

In the case of *Artz* v. *Railroad Co.*, 34 Ia. 154, cited with approval in *N. & W. Ry. Co.* v. *Crowe's Admx., supra,* the court, after a full discussion of this subject, concludes that "an object and power of sight being conceded, the one may not negative the other."

We therefore conclude that the jury, which heard and saw the witnesses and is the judge of the credit to be accorded to the testimony, may with propriety have found, upon a review of all of the evidence before it, that the engineer in fact discovered the position of the child in time to have avoided the injury inflicted upon him.

We are, therefore, of opinion that the judgment should be affirmed.

*Affirmed.*