Richmond.

## NORFOLK AND WESTERN RAILWAY COMPANY V. FRANK A. HENDERSON, ADM'R.

March 16, 1922.

Absent, West, J.

1. RAILROADS—*Injuries on or near Track—Licensees—Conclusiveness of Testimony of Trainmen—Case at Bar.*—In the instant case, plaintiff's intestate, a child twenty-six months old, was killed by a train of defendant. At the place at which she was killed, the tracks, with the knowledge of defendant and its employees, had for many years been used as a walkway. The child, when killed, was stooping or bending over, and wore a light-colored dress. The track was straight for nearly twelve hundred feet in the direction from which the train was approaching. The engineer, fireman and two brakemen who were in the engine testified that they saw the child as soon as the engine reached the straight track, but did not recognize the object as a child, and did not discover its identity until within about three hundred and fifty feet of the point at which the child was struck, when the engineer did all that he could towards saving the child's life.

   *Held:* That the jury were not bound to accept the testimony of the trainmen as conclusive.

2. RAILROADS—*Injuries on or near Track—Identity of Object on Track as Person—Duty of Engineer—Case at Bar.*—In an action for the death of a child, a licensee, struck by a train, if, as claimed by the occupants of an engine, they saw the object on the track as soon as they could see it and, at that time, had no reason, from its appearance, to believe it was a human being, and, in the exercise of the diligence required of them at a place regularly used by men, women and children, had no reason to know sooner than they did that it was probably a child, and, after making the discovery, used every reasonable means to avoid the injury, the defendant was not liable.

3. RAILROADS—*Injuries on or near Track—Discovery of Identity of of Object on Track.*—In an action for the death of a child, a

licensee, on defendant's track, the court instructed the jury that "if they believe from the evidence that the engineer in charge of the defendant's train which struck and killed the deceased, saw some object upon the track, which, by the exercise of ordinary care, he could and would have discovered was a child in time to have avoided striking it, and failed to do so, the defendant is liable, and the jury should find for the plaintiff."

*Held:* That, while this instruction could with propriety have been made a shade more favorable for plaintiff by inserting the word "probably" before "a child," it accurately presented the theory upon which plaintiff was entitled to recover.

4.  RAILROADS—*Injuries on or Near Track—Discovery of Identity of Object on Track.*—In an action for the death of a child, a licensee, on defendant's track, the court instructed the jury that "if they believe from the evidence that while the plaintiff's intestate was lying or sitting on the track she was seen by those in charge of the defendant's train and was thought to be some inanimate object as a bundle or piece of paper; that they continued to look at said object and as soon as they discovered, or by the exercise of ordinary care would have discovered, it to be a child, used reasonable care to prevent injuring her, they must find a verdict for the defendant."

*Held:* That the instruction correctly presented defendant's theory, although the insertion of the word "probably" before the words "a child," would have more accurately defined the duty.

5.  INSTRUCTIONS—*Succinctness—Number of Instructions.*—It is, of course, sometimes necessary, by reason of the number of issues involved or the varied aspects of the case, to give a number of instructions, but this is not ordinarily true, and ought to be avoided whenever possible, for it must be a matter of common knowledge and experience with the profession that where the instructions are numerous and lengthy, they are often not digested or comprehended by the jurors, and, therefore, as often not useful to them.

6.  RAILROADS—*Injuries on or near Track—Identity of Object—Instructions.*—In an action for the death of a child struck by a train of defendant, defendant asked the court to add to an instruction for the plaintiff a clause to the effect that defendant was not liable "for an error of judgment in the engineer in failing to identify as a child stooping on the track and practically motionless an object which he took to be a piece of paper before he actually ascertained it to be a child." The instruction to which this amendment was sought embodied the prin-

ciple that plaintiff's right to recover depended upon the failure
of the engineer to exercise ordinary care. Furthermore, an
instruction, given for the defendant, said that there could be
no recovery if those in charge of the train, in the exercise of
ordinary care, failed to discover the child in time to avoid the
injury.

*Held:* That the amendment in question might have unduly empha-
sized the defense which was fully covered by the instruction
as given, and its refusal was, therefore, not erroneous.

7. Railroads—*Injuries on or near Track—Identity of Object—In-
structions.*—In an action for the death of a child killed by the
train of defendant, an instruction that if as soon as the em-
ployees of defendant discovered, "or by the exercise of ordi-
nary care would have discovered," an object on the track to
be a child they used reasonable care to prevent injuring her,
the jury must find for defendant, was not error because of
the words "or by the exercise of ordinary care would have dis-
covered."

8. Railroads—*Injuries on or near Track—Licensees—Duty of Look-
out.*—Where the track of a railroad company is frequently
used with the knowledge of the company and its employees as
a walkway, the employees of the company are under the duty
of keeping a lookout for the express purpose of discovering
and avoiding injuries to persons at that point.

9. Railroads—*Injuries on or near Track—Trespassers—Identity of
Object on Track.*—Even in the case of a trespasser, after dis-
covering an unknown object on or near the track, though the
employees of the company believe it to be inanimate, they have
no right to disregard its presence, but must keep a lookout
until its character is determined. They must exercise ordinary
care to discover the identity of the object.

10. Railroads—*Injuries on or near Track—Licensees—Child, Sit-
ting or Sleeping on Track.*—In an action for the death of a
child twenty-six months old struck by a train of defendant
upon a portion of defendant's track long used as a walkway
by the public, defendant claimed that the child was not a
licensee if she were asleep or sitting down at the time of her
death, but a trespasser.

*Held:* That the child was a licensee, and could not at its age
lose its rights by its own negligence in sitting down on the
track, and that its position did not abrogate the defendant's
duty of lookout, although it was a circumstance for the jury
to consider in determining whether that duty was performed.

11. Railroads—*Injuries on or near Track—Expert and Opinion
Evidence—Time within which Train could have been Stopped—*

*Harmless Error.*—In an action for the death of a child, a licensee, struck by a train of defendant, an experienced locomotive engineer, but one who for a number of years had not been engaged in railroad work, testified that under the conditions prevailing at the time of the accident, the train could have been stopped within two hundred yards.

*Held:* That if there was any error in admitting this testimony, it was harmless,. because the engineer in charge of the train testified that he could have stopped, and did stop, in the exact distance named.

12. Experiments in Evidence—*Child Killed on Railroad Track— Recognition of Object on Track as Child.*—In the instant case, an action for the death of a child killed by a train, the crucial question was how far from the point of the accident the occupants of the engine could recognize a child as such when it was sitting on the rail at that point. The trial court permitted certain witnesses to testify as to several tests or experiments which they made for the purpose of determining this distance. These witnesses testified that they could recognize a child about the size of the one killed and could identify it as such at a distance of nine hundred feet on a cloudy day, and eleven hundred feet on a clear day, thus contradicting the occupants of the engine which killed the child who testified that they could not identify the object as a child until within about three hundred and fifty feet.

*Held:* That, notwithstanding the facts that the witnesses when the experiments were made were on the track and not in a moving engine, and that they knew that a child had been placed on the track, this evidence was admissible. The effect of these differences upon the value of the tests as proved was for the jury.

13. Experiments in Evidence—*Admissibility for Court—Weight for Jury.*—The admissibility of an experiment in evidence is a question for the court and its weight and effect is a question for the jury.

14. Experiments in Evidence—*Similarity of Conditions—General Rule.*—Tests and experiments must be made under substantially the same conditions as those prevailing at the time and place of the occurrence under investigation.

15. Railroads—*Injuries on or near Track—Licensees—Duty of Engineer to Discover Character of Object on Track Used as Walkway.*—Where an engineer saw an object on the track at a point used by the public as a walkway, although he did not actually know that the object was a child, he ought to have been very alert to discover its character, as he could not law-

fully proceed on the assumption that there would be no child in danger at that place.

16. Experiments in Evidence—*Similarity of Conditions.*—The rule requiring similarity of conditions for the admissibility of tests or experiments in evidence does not mean that such experiments can never be used unless it is possible "to reproduce conditions as they actually existed," as that would practically exclude all such experiments.

17. Experiments in Evidence—*Foreknowledge.*—Persons who experiment with a situation for the purpose of ascertaining what would happen or be true under a given state of facts usually know in advance what they are attempting to demonstrate. As a rule, such foreknowledge does not render their testimony as to the result of their experiments incompetent, although it may often very properly affect its weight and value.

18. Experiments in Evidence—*Admissibility—Discretion of Trial Judge.*—The question of the admissibility of experiments in evidence is one of relevancy, as to which, in debatable instances, the discretion of the trial judge is entitled to much consideration.

Error to a judgment of the Circuit Court of Campbell county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*F. Markoe Rivinus* and *Kirkpatrick, Howard & Burks,* for the plaintiff in error.

*M. B. Booker, Carrie M. Gregory* and *John L. Lee,* for the defendant in error.

Kelly, P., delivered the opinion of the court.

This action was brought to recover damages for the death of the plaintiff's intestate, Marian Henderson, a child twenty-six months old, who was run over and killed by one of

the defendant's trains.  There was a verdict and judgment for the plaintiff, and the defendant assigns error.

[1, 2]  The accident occurred about nine o'clock A. M. on a clear day within the corporate limits of the town of Brookneal, in Campbell county.  For many years the railway tracks at that point had, with the knowledge of the railway company and its employees, been used as a walkway by men, women and children.  Marian Henderson had wandered away from the home of her parents, about a hundred yards from the railroad, and was sitting down on, or beside, the rail.  She wore a light-colored dress, with a stocking net cap over her head, and was stooping or bending over, with her hands down, as if trying to pick something up from the track.  For a distance of nearly twelve hundred feet in the direction from which the train was approaching, the track was perfectly straight.  In the engine at the time were the engineer, fireman and two brakemen, and they all testify that they saw the child as soon as the engine reached the straight track, but thought the object was a piece of paper, or, as one of the brakemen said, either a piece of paper or a big white chicken.  According to their testimony, they kept their eyes on this object, but did not discover its identity until they were within about three hundred and fifty feet of the point at which he child was struck.  It was then too late to stop the train, but the engineer blew his whistle, applied his brakes in emergency, and did all he could towards saving the child's life.

The speed of the train was about twenty-five miles an hour, and with prompt action could have been stopped within a distance of about six hundred feet.  It is thus apparent that there was ample opportunity to stop after the object was first seen and before it was struck, but no chance of doing so after the engineer and others in the engine first discovered the character of the object.

Of course, it is not contended, nor is it to be imagined, that the defendant's employees intentionally ran over the child. Furthermore, it is clear that if the jury were bound to accept the testimony of these employees as conclusive, the verdict was wrong and the judgment ought to be reversed. If, as claimed by them, they saw the object as soon as they could see it and at that time had no reason, from its appearance, to believe it was a human being, and, in the exercise of the diligence required of them at a place regularly used by men, women and children, had no reason to believe sooner than they did that it probably was a child, and, after making the discovery, used every reasonable means to avoid the injury, the defendant was not liable. All of these conditions of non-liability were established, if the evidence given by the only person who could see the situation from the engine was conclusively binding upon the jury. Was it conclusive? The answer to this inquiry must precede the determination of the final and decisive question in the case, which is, whether they discovered or ought to have discovered that the object was probably a child in peril before it was too late to take effective measures for its safety.

The law of the case is stated so succinctly and with such approximate accuracy in the instructions given by the court to the jury that they may appropriately be set forth at this point. The instructions as given were as follows:

[3] First, on behalf of the plaintiff: "The court instructs the jury that if they believe from the evidence that the engineer in charge of the defendant's train which struck and killed the deceased, saw some object upon the track, which, by the exercise of ordinary care, he could and would have discovered was a child in time to have avoided striking it, and failed to do so, the defendant is liable, and the jury should find for the plaintiff." This instruction could, with propriety, have been made a shade more favorable for the

plaintiff by inserting the word "probably" before the words "a child."

[4] Second, on behalf of the defendant: "The court instructs the jury that if they believe from the evidence that while the plaintiff's intestate was lying or sitting on the track she was seen by those in charge of the defendant's train and was thought to be some inanimate object, as a bundle or piece of paper; that they continued to look at said object and as soon as they discovered, *or by the exercise of ordinary care would have discovered,* it to be a child, used reasonable care to prevent injuring her, they must find a verdict for the defendant." (Italics added for purposes of comment indicated, *infra.*) The insertion of the word "probably" just before the words "a child," would have more accurately defined the duty.

These two instructions, in our opinion, presented to the jury in a clear and helpful manner the theory upon which the plaintiff was entitled to recover if the evidence warranted a recovery, and the theory upon which the defendant was entitled to a verdict if the evidence warranted such a verdict.

[5] We have so often had occasion to comment upon the unwisdom of prolixity and repetition in the giving of instructions that we wish to commend the counsel on both sides for the care which was evidently bestowed upon the preparation of the instructions requested, and to commend the court for the conciseness and clearness with which it submitted the issue to the jury. Instructions of this kind are of real service to the jury in reaching a correct conclusion. As we have said in other cases, it is, of course, sometimes necessary, by reason of the number of issues involved or the varied aspects of the case, to give a number of instructions, but this is not ordinarily true, and ought to be avoided whenever possible, for it must be a matter of common knowledge and experience with the profession that where

the instructions are numerous and lengthy, they are often not digested or comprehended by the jurors, and, therefore, as often not useful to them.

1. It is somewhat out of the order in which the assignments are dealt with in the petition, but while we are on this subject of instructions we may as well dispose of the errors complained of in that respect.

[6] With reference to the plaintiff's instruction first above recited, the defendant asked the court to add this amendment: "But the court instructs the jury that the defendant is not liable for an error of judgment in the engineer in failing to identify as a child stooping on the track and practically motionless, an object which he took to be a piece of paper before he actually ascertained it to be a child." The court refused to make this amendment, and the defendant insists that this refusal was erroneous. The amendment might perhaps have been added without impropriety, though even as to this we do not feel entirely confident, and in any event there was certainly no error in refusing it. The plaintiff's right to recover depended upon the failure of the engineer to exercise ordinary care, and this principle was embodied in the instruction. Furthermore, the second instruction, given for the defendant, said that there could be no recovery if those in charge of the train, in the exercise of ordinary care, failed to discover the child in time to avoid the injury. This, in effect, told the jury that an error in judgment, provided the defendant's employees based their judgment upon the situation as it would have appeared to men in the exercise of ordinary care, would not entitle the plaintiff to a recovery. The amendment in question might have unduly emphasized the defense which was otherwise fully covered by the instruction as given.

[7-9] With respect to the instruction as offered on behalf of the defendant, complaint is made because the court, be-

20

fore giving the same, added the words, "or by the exercise of ordinary care would have discovered," italicized in the instruction as above set forth. The amendment was clearly proper. The place at which the accident occurred was known to be frequently used by men, women and children as a walkway, and the employees of the company were under the duty of keeping a lookout for the express purpose of discovering and avoiding injury to persons at that point. *Southern Ry. Co.* v. *Wiley* (case of a child two and a half years old, on its hands and knees), 112 Va. 183, 184, 189, 70 S. E. 510. Even in the case of a trespasser, this court has held that after discovering an unknown object on or near the track, though the employees of the company believe it to be inanimate, they have no right to disregard its presence, but must keep a lookout until its character is determined. *Washington & O. D. R. Co.* v. *Jackson's Adm'r*, 117 Va. 636, 640, 85 S. E. 496. This simply means that they must exercise ordinary care to discover the identity of the object, and this is all that the court told the jury by the amendment.

Complaint is made of the refusal to instruct that if the plaintiff, who was the child's father, was guilty of negligence in permitting her to stray away from home, such negligence would prevent a recovery in the case for his benefit. Of this it is sufficient to say that there was no evidence in the case which would have justified the giving of such an instruction.

[10] The defendant asked for an instruction as follows: "The court instructs the jury under no use of the defendant's track by the public as a walkway, as testified to in this case, can any license be implied on the defendant's part that Marian Henderson should use its tracks in the manner employed at the time of her death. She was, therefore, not a licensee if she were asleep or sitting down at the time of her death, but a trespasser, to whom the only duty

owing by the defendant was to use reasonable care not to injure her after her position of danger was actually discovered by those in charge of the train."

There was no error in refusing this instruction. The case of *Va. Ry. & P. Co.* v. *Winstead,* 119 Va. 326, 89 S. E. 83, relied upon by the defendant, is not in point. That was a case in which a drunken man, in the night-time, was lying dangerously near a street railway track in the city of Norfolk, and was struck and killed by a street car. His administrator sought to recover partly upon the theory that the defendant had not equipped its cars with a sufficient headlight. The facts showed that the headlight would have disclosed a pedestrian using the street in an ordinary way, and we held that the railway company did not have to assume that men would lie down on the track, and did not have to equip their cars with electric lights so arranged as to operate as a searchlight for persons in this position. In the instant case, however, the accident occurred in broad daylight, and, furthermore, the place was one frequented not only by men and women, but by children, whose playful habits and lack of discretion are matters of common knowledge; and when this object was discovered on the track, there was a positive duty on the railway company's employees to exercise reasonable care to discover its identity. There was nothing at all to hinder the making of this discovery except the intervening distance, and this distance was being constantly reduced by the approach of the train. The child was a licensee, and could not at its age lose these rights by its own negligence in sitting down on the track. *Southern Ry. Co.* v. *Wiley, supra.* Its position did not abrogate the defendant's duty of look-out, but was of course a circumstance for the jury to consider in determining whether that duty was performed.

We find no error with respect to the instructions.

[11] 2. A witness named Harvey, sixty-two years old, an

experienced locomotive engineer, but one who for a number of years had not been engaged in railroad work, was asked within what distance he thought the train which struck the child could, under the conditions prevailing at that time, have been stopped. His answer was that it could have been stopped in two hundred yards. This testimony was admitted over the objection of the defendant, and constitutes the basis of one of the assignments of error. If there was any error in admitting this testimony it was plainly harmless, because the engineer in charge of the train testified that he could have stopped, and in fact did stop, in six hundred feet—the exact distance named in Harvey's estimate.

[12-14] 3. The leading assignment of error, presented to us with marked earnestness and ability, is that the court permitted certain witnesses to testify as to several tests or experiments which they made for the purpose of determining the distance up the track from which they could recognize a child as such when it was sitting on the rail at the point of the accident. There were two or more of these experiments made by sundry persons, some when the day was perfectly clear, and others in dark and cloudy weather. A child about the size of the one who was killed, and similarly dressed, was placed at the same place and in substantially the same position, and the witnesses in question then went up the track to see how far away they could recognize the object as a child. The result of the testimony was that, when the day was clear, they could recognize the child at a distance of something like eleven hundred feet away, and that on a dark or cloudy day they could identify it at a distance of nine hundred feet. These witnesses, of course, knew from the outset what the object was, but they were very positive in their testimony that under weather conditions as above indicated they could clearly and unquestionably recognize the child as such at the respective distances stated.

The contention of the defendant is that these tests wera inadmissible because the conditions under which they were made were not substantially the same as those by which the engineer was surrounded.

One of the differences pointed out is that the engineer was on an engine, the motion and vibration of which would interfere with clear vision, while the witnesses who were making the tests were on the ground. This particular difference in the situation of the parties, however, is shown by the evidence to have been unsubstantial. The witness, Harvey, an old engineer, testified that he had participated in one of the tests and that, in his opinion, a man in the engine moving as this one was would have been in a, more favorable position for making the discovery than a man on the track. Nobody testified to the contrary. Moreover, and perhaps even more to the point, the engineer in charge of the engine, after saying that he did not think these tests were fair, upon being asked to specify the reason why he did not think they were fair, said: "Knowing a thing is there and having your mind to help you out makes a great deal of difference." This was a pointed, sensible and comprehensive answer; and it is this difference, very appropriately called in the petition for the writ of error "the difference in the mental attitude of the parties," which the defendant chiefly relies upon, and, in view of the testimony, must solely rely upon, as a, reason why the evidence should not have been admitted.

We may say, therefore, that the real question as to the admissibility of these tests is whether the fact that the witnesses making them knew from the outset that a child had been placed on the track constituted such a difference between their situation and that of the engineer and others with him in the engine as to render the tests incompetent as evidence. The position of the defendant in this respect does not seem to us to be well taken. We do not mean to

say that this difference is of no consequence, but we think that its effect upon the value of the tests as proof, was a question to be determined by the jury.

It is a simple proposition, but important to keep in mind here, that there was necessarily some point at which men of average vision could, from an approaching engine, be certain that the object was a child.  Some allowance is properly to be made for the fact that the men in the engine did not have, as an aid to their sight or vision, knowledge in advance that a child was in fact on the track at that point.  But we cannot think it would do to say that the jury in such a case must accept as conclusive the statement of the engineer as to the distance from which he could, in the exercise of ordinary care, make the discovery.  Certainly, railroad engineers must be presumed to have at least as good eyes as the average person (*So. Ry. Co.* v. *Wiley, supra*), and there are limits within which the reach and certainty of their vision cannot be credibly denied.  If, for example, the engineer in this case had said that he was in fifty feet of the object before he could recognize it as a child, the common knowledge of the jury, without any rebuttal evidence would have justified them in finding that his statement was not true.  There would be more and more room for difference of opinion in regard to his ability to recognize the object as the distance therefrom increased, and he was perhaps within the bounds of credibility when he said that he was in 350 feet of the child before he could discover its identity.  But the inquiry naturally arises, how in a case like this, where the physical facts make the question doubtful, are the jury to fairly determine whether the engineer is telling the truth?  We know that the engineer in this case did not intend to run over a child, but when a deplorable accident of this kind has occurred, men charged with causing it are always prone to excuse themselves from blame, and they will sometimes make inaccurate and un-

true statements as to the circumstances when they would have been very far from intending to bring about the calamity. The plaintiff could not be expected to obtain the use of a freight train in order to make an experiment, and, as the real question was one of eyesight, he was entitled to have intelligent and disinterested parties observe the situation under substantially similar conditions and then let the jury pass upon the reliability of the tests. Its admissibility was a question for the court, and its weight and effect was a question for the jury. (See the authorities cited, *infra.*) Proper allowance should be, and of course would be, made for the difference in the mental attitude of the parties, but there was a very wide margin between the point eleven hundred feet away from the place at which, on a clear day, the witnesses said they could positively identify the object as a child and the point three hundred and fifty feet away, at which, on a like clear day, the engineer and others with him said they had arrived before they could make such identification.

The rule, to be sure, is well settled that tests and experiments must be made under substantially the same conditions as those prevailing at the time and place of the occurrence under investigation, but this rule cannot be carried to the extent for which the defendant contends in this case, nor do the decisions, either in Virginia or elsewhere, relied upon by the defendant go thus far.

In *Rudd's Adm'r* v. *R. & D. R. Co.,* 80 Va. 546, a boy, twelve years of age, was sent by his parents to mind cows in a field along the railway. He fell asleep on the track and was run over by a freight train and killed. The majority opinion recites that "an experiment made with a boy about twelve years of age, of the size of the deceased, showed that an object of that size could be seen on the road at a distance of 1,118 yards from the curve or turn in the road." No question of the identity of the object was

involved. In discussing the probative value of the experiment, the court said: "The experiment, made by plaintiff's witness, of placing a boy twelve years of age, and of about the size of the deceased, in position on the track, and then being able to see him from a point of observation 1,118 yards off, when they knew that he was thus placed there, and their undertaking was to *see him,* does not prove that the deceased, lying down flat on the track, may not have escaped the observation of the engineer, even when he was at his post and on the look-out, at that great distance, and while the train was running rapidly along."

Upon all the facts in that case, the correctness of the decision does not seem entirely free from doubt, and it is to be noted that Judges Lewis and Richardson dissented. But the case is distinguishable from the one at bar with respect to the experiment. Rudd was on the track, as shown by the opinion, at a point where the defendant *"had a right not to expect or apprehend any person to be,"* and the purpose of the experiment was to show, not how far away the engineer could have recognized the object as a human being, but how far away he could have seen if he had been looking. It is true the engineer said he had been looking out, but he was under no obligation to be keeping, and did not say that he was keeping, the vigilant look-out which he would have been expected and required to observe at a place constantly used by adults and children. The court very plausibly said, therefore, that the experiment did not prove that the boy "may not have escaped the observation of the engineer." The question was not how far he could have seen and recognized Rudd if he had been looking out for him, for he owed no duty of look-out; but whether, after seeing him, he did all he could to save him—and it was clear that, after seeing the boy, it was impossible to prevent the injury.

[15] In the present case, the engineer had every reason to expect children to be on or near the tracks, and was bound

to look out for and discover them. This distinction between the two cases is of very material import in connection with the tests in question here. The mental attitude of the persons making the tests in the instant case cannot, after all, be regarded as very different from that with which the engineer ought to have regarded the object. He did not actually know that the object was a child, but, in view of the known use of the track at that point, he ought to have been very alert to discover its character. He could not lawfully proceed on the assumption that there would be no child in danger at that place.

The case of *Richards* v. *Commonwealth*, 107 Va. 881, 59 S. E. 1104, is relied upon by the defendant. In that case there was a question about the identity of certain tracks made by the accused, and a witness was allowed to testify that during the trial he had gone to the scene of the shooting and made tracks with his own and with the shoes of another, and found that the tracks in each case were shorter than the shoes which made the tracks. The court, dealing very briefly with the question, simply said that the evidence did not clearly show that the conditions under which these experimental tracks were made "were the same or substantially similar" to those prevailing at the time the tracks alleged to have been those of the accused were made; and, as the case had to be reversed on other grounds, the court said it would not pass upon the question at that time, but that, upon another trial, evidence of such experiments should not be admitted unless it satisfactorily appeared that the tracks were made under conditions the same as, or substantially similar to, those surrounding the shooting of the deceased. This was merely the affirmation of a general and well-settled rule, and one which was not violated by the admission of the evidence complained of here. The conditions of the experiments in this case were substantially similar to those confronting the engineer, and such

dissimilarity as existed was clearly and emphatically brought to the attention of the jury and was a matter for them to weigh and appraise.

In the case of *Norfolk & Western Railway Co.* v. *Sollenberger*, 110 Va. 615, 66 S. E. 726, cited and relied upon by the defendant, an employee of the company was sent with a flag to protect a work-train. It was claimed that from exhaustion he lay down and went to sleep on the track. While in that position, he was run over and killed by a backing train. The following is taken from the opinion of the court:

"Some time after the accident a test train was made up to correspond with the wrecking-train used at the time Sollenberger was killed. Counsel for plaintiff and defendant were present, and numerous tests were made, and no doubt with the utmost fairness and integrity of purpose. But after all, it is impossible to reproduce conditions as they actually existed. If it were possible to reproduce all the physical conditions, as may be done in theory, but not in practice, the mental attitude of those engaged in the tests is necessarily wholly different. Every man engaged in the test knew from the beginning that in the actual occurrence there was a man upon the track exposed to imminent danger. The positions of the actors at a particular moment of time could not be determined with precision; and upon the whole it seems to us that the case must, after all, be determined upon the evidence adduced before the jury by witnesses who were present upon the occasion of the accident, and who testified to what they saw and heard of the actual occurrence. It is oftentimes instructive to take a jury to the scene of an accident, in order to enable them more intelligently to appreciate the evidence adduced before them; but that is altogether different from what was done in this case."

[16, 17] This expression of the court, upon a casual read-

ing, gives color to the contention of the defendant, but upon analysis will not be found to afford substantial support therefor. The experiment in the *Sollenberger Case* was of a more complicated character than the test in the instant case, because it involved not merely a question of human vision, but co-ordinate action in emergency by two men placed in proper relative position, and the quick manipulation of machinery by one of them. In such a case, to be forewarned was to be forearmed, and foreknowledge was an exceedingly important circumstance. There was no immediate emergency in the instant case. The engineer, like the persons making the experiments on the track, had time for deliberate observation. His train was drifting downgrade at twenty or twenty-five miles an hour, and all he had to do was to use his eyes. The statement by the court in the *Sollenberger Case* that "it was impossible to reproduce conditions as they actually existed" (see page 23), must be read in the light of the facts of that case, and cannot be given a literal meaning for use in all cases, because that statement would be true, to a greater or less extent, of every experiment or test of this character, and it may be confidently asserted that the court did not mean to say that tests and experiments can never be used in evidence unless it is possible "to reproduce conditions as they actually existed." The use of such evidence is too common and too fully supported by authority to admit of any such construction of the *Sollenberger Case*. Substantially the same thing may be said of the reference in the opinion to the "mental attitude of those engaged in the tests." Foreknowledge that a quick emergency stop was to be made with the "test train" was an unusually important factor in that instance, and constituted a material and probably vital difference between the conditions under which the test was made and those under which the injury to Sollenberger occurred. But foreknowledge cannot be allowed to

exclude evidence of every experiment, for this would virtually exclude them all. Persons who experiment with a situation for the purpose of ascertaining what would happen or be true under a given state of facts usually know in advance what they are attempting to demonstrate. As a rule, such foreknowledge does not render their testimony as to the result of their experiments incompetent, although it may often very properly affect its weight and value.

In *Goings* v. *N. & W. Ry. Co.*, 119 Va. 543, 89 S. E. 914, another case relied on by the defendant, this court held that the trial court was right in excluding proof of a test made, but placed the decision primarily upon the ground that the evidence was immaterial for reasons theretofore stated; and secondly, upon the ground that conditions were different. And it is to be noted that, although the court in that case specifically pointed out the difference in conditions, no importance was attached or reference made to the fact that much the same difference in mental attitude relied on in this case accompanied the test there.

The cases of *Richmond Passenger & Power Co.* v. *Racks*, 101 Va. 487, 44 S. E. 709, and *Wise Terminal Co.* v. *McCormick*, 104 Va. 400, 51 S. E. 731, cited by the defendant, are not in point. Those cases relate to expert testimony, and not to experimental tests. The principle announced therein would, however, apply here, if we could say, as we cannot, that the conditions accompanying the tests were so dissimilar to those confronting the engineer as to render proof of the former inadmissible.

Coming now to the cases outside of Virginia, cited by the defendant, the first is *Chicago & Alton R. Co.* v. *Logue*, 47 Ill. App. 292. No facts as to the circumstances of the experiment are shown in the report of the case except such as appear from the following sentence in the opinion:

"There was also error in the admission of evidence as to placing an object on the track and proof as to the dis-

tance it could be seen and distinguished, where the circumstances and surroundings were *wholly different* from those attendant on the engineer in the discharge of his duties." (Italics added.)

In the absence of any statement of the "circumstances and surroundings," the value of the case as authority here cannot be determined. Certainly it does not in terms reject the experiment as evidence on the ground that the person who placed the object on the track knew in advance of its presence there and of the purpose to be accomplished in making the observations.

In *Alabama G. S. R. Co.* v. *Burgess,* 114 Ala. 587, 22 So. 169, the following ruling (quoted from 8 Dec. Digest 717) appears, and is cited by the defendant: "Whether children on a railroad track, and the fact that they were children, could have been discovered by the engineer in time to stop the train before reaching them, by the exercise of due care, cannot be shown by an experiment made a month after the accident, by placing children on the track and noting the distance at which they were distinguishable by witnesses looking from the direction from which the train had come."

This quotation, it must be conceded, appears to support very strongly the position of the defendant. We have examined the report of the case, however, and find that the opinion as a whole cannot be given the full effect claimed for it here. The point was not made, and the court did not hold, that the evidence was objectionable because the persons making the experiment knew in advance that the children had been placed on the track. The objection specified was that the evidence "was irrelevant, and the experiment made out of court, when defendant was not present, and because conditions were not shown to be the same as on the occasion of the accident." The court, in holding that the evidence was improper, merely said: "The conditions are too variant."

In *Chicago City Ry. Co.* v. *Brecher,* 112 Ill. App. 106, 108, the action was to recover damages sustained by the plaintiff while riding on the footboard of an engine. While going over a crossing on the track, the engine sank down by reason of the unsafe condition of the track, and the plaintiff was thus injured. The next day the same engine, equipped with a new footboard, not shown to have been the same height as the old one, and without any cars attached, was run over the crossing. The speed of the engine on the two occasions was not the same. Some repairs had, in the meantime, been made at and near the crossing. The court said: "In spite of this dissimilarity of conditions, and over the repeated objections and exceptions of appellant, the results of this experiment were submitted to the jury. This action of the trial court is reversible error. Unless it be shown that all the essential conditions of the experiment are identical with those existing at the time of the accident, the results of that experiment have no legitimate bearing upon the issues before the jury, since, instead of enlightening the jury, their tendency is to confuse and to mislead them."

The decision does not seem to involve in any way the question of "mental attitude," and appears to rest upon the general and well-settled rule of evidence applicable to cases of its kind. Of course, the court did not mean to lay down the rule that *all* the conditions must be *identical,* but merely that all the conditions essential to a fair test must be the same. Even as thus explained, the word "identical," if taken literally, is a stronger term than the rule, as generally approved and expressed, would justify. It is only necessary that the essential conditions should be substantially similar.

The other two cases relied on by the defendant—*Chicago & E. I. R. Co.* v. *Crose,* 113 Ill. App. 548, and *Zimmer* v. *Fox River, etc., Co.,* 123 Wis. 643, 101 N. W. 1099—do not

deal, directly or indirectly, with the question of "mental attitude," and merely follow the general rule that attending conditions must be sufficiently similar to fairly illustrate the point at issue.

Counsel for the defendant concede that upon the question under consideration the authorities are not uniform. We have shown that those relied upon for their contention do not adequately support it. No case has been found, in this State or elsewhere, which holds that a mere difference in the mental attitude of the parties, as that expression is used in this case, is a sufficient difference to exclude the tests; and we think the weight of authority and the better reason is to the contrary.

In *Pandandle & S. F. Ry. Co.* v. *Haywood* (Tex. Civ. App., Dec. 15, 1920), 227 S. W. 347, the action was to recover damages for the death of a child twenty months old, who was killed on the track. The court said:

"Several witnesses who made experiments under similar conditions, *except that they were not looking out of the cab of a moving engine, but were on foot,* testified that they could see a child slightly larger than this one at a distance varying from 1,700 feet to 2,700 feet, and one witness testified that he could tell that there was some object on the track, though unable to identify it as a child, for a distance of 3,000 feet. The engineer testified that he could see an object as large as a child for a distance of 600 feet. This evidence, we think, makes an issue for the jury, and warrants their finding that if the engineer had been keeping a lookout, as he said he was, he would have discovered the child when the engine was farther away from it than a distance of 300 feet." (Italics added.)

In *Burg* v. *Chicago R. I. & P. Ry. Co.*, 90 Iowa 106, 57 N. W. 680, 48 Am. St. Rep. 419, children were placed on the track by the defendant railway company for the express purpose of making certain tests to determine,

first, the distance at which the children on the track at the time of the accident involved could have been seen by the engineer of the approaching train; and, second, the possibility of stopping the train, so as to prevent the accident, after the situation was or should have been known. Some of the tests were made with the same train in use when the injury occurred, and the others with a substantially similar train. To that extent (although, as already pointed out, this particular distinction between the cases is immaterial here) the conditions were more like those attending the accident than in the instant case; but it is to be observed, and we refer to the case for that reason, that there was the precise difference in the mental attitude of the persons engaged in making the tests which is relied upon by defendant as decisive here, and the court said: "It is true the conditions were not identically the same, but they were essentially so. * * * In fact, we do not discover a difference as to conditions in any substantial particular. We think the tests were proper, and, if fairly made, the facts thereby disclosed would be of great value in reaching a conclusion."

In *Harrison* v. *So. Ry. Co.*, 93 Miss. 41, 46 So. 409, the following facts appear in the statement preceding the opinion:

"The theory of the appellant is that the engineer on the train could have seen and should have seen the child in time to stop the engine, and that between the place the engineer sounded the alarm by blowing his whistle and the place the child was struck, the engineer could then have put on emergency brakes and stopped the engine before reaching the child. In support of this contention, he offered evidence of experiments made at that place, at the same time of day and under similar climatic conditions, attempting to show by witnesses the distance at which a child, the same size as the one killed, could be seen on the track."

It does not affirmatively so appear from the statement of the above case, but the clear inference is that the observations were made by the witnesses from the ground and not from an engine; and it is perfectly manifest that they made these observations with foreknowledge that a child was on the track. The Mississippi Supreme Court, in the opinion, said:

"The court also erred in excluding the testimony of the witnesses of the appellant with respect to the experiments made as to how far the baby could be seen from the direction from which the train came. This testimony was clearly competent. The purpose of the inquiry was to show whether the engineer saw, or ought to have seen, the child in order to have avoided the catastrophe, and it was directly relevant to that inquiry. The experiments were made on the same kind of a day as that on which the injury occurred, at the same hour of the day, and under like conditions in every respect, and we fail to see any sound reason which can support the exclusion of the testimony taken under circumstances identical, or nearly identical, with those obtaining on the day the injury was inflicted."

In *St. Louis, I. M. & S. Ry. Co.* v. *McMichael*, 115 Ark 101, 171 S. W. 115, the defendant at the trial proved certain experiments made by it, one with the same engine and the same number of cars as those in use when the accident happened, and another with a similar engine and the same engineer. In rebuttal, the plaintiff was allowed to prove by a number of witnesses that, after a man had placed himself in the position in which the injured man was at the time of the accident, they walked up the track and made their observations. Their testimony is fairly illustrated by the following quotation from the evidence of one of these witnesses: "The man was sitting on the edge of the platform facing the track, in about this position (indicating). We walked up as far as the trestle—383 steps. I turned around

to see if I could see anything on the platform. I could tell very readily that it was a man. I could see his hand; that is, the hand next to me—very clearly."

This evidence was admitted over the objection of the defendant, and in passing upon this action by the trial court, the Supreme Court of Arkansas said:

"We are of the opinion that the court did not err in holding that the conditions under which the experiments were made by the witnesses on behalf of the appellee were substantially the same. It is true that the witnesses who made these observations were not on an engine moving at a speed of thirty-five or forty miles an hour, but there was testimony of expert passenger engineers to the effect that one accustomed to the movements of an engine could see a man as plainly from an engine going thirty-five or forty miles per hour as one standing or walking on the track. This testimony, although contradicted by expert passenger engineers testifying for appellant, was, nevertheless, sufficient to render the testimony of the witnesses for appellee competent, so far as the essential similarity of view points was concerned."

In the instant case, as we have seen, an engineer of many years' experience testified that a man in a moving engine could, in his opinion, see and identify an object ahead on the track more easily than if he were down on the level of the track; and, moreover, the defendant's engineer seemed to concede in his testimony that the foreknowledge of the presence of the child on the track constituted the only advantage in favor of the observations made by the man on the ground. Exactly that advantage, it will be observed, was enjoyed by all the persons making the tests mentioned in the *McMichael Case, supra,* and they were all held to be properly admitted in evidence.

Without quoting further from the decisions in point, we refer to the following cases, each of which will be found

satisfactory, authority for the proposition that the mere foreknowledge of the position and identity of the object on the track cannot be made the test for excluding evidence of experiments like those here under consideration. *Gulf C. & S. F. Ry. Co. v. Whitfield* (Tex. Civ. App.), 206 S. W. 381; *Young v. Clark, et al.,* 16 Utah 42, 50 Pac. 832, 3 Ann. Neg. Rep. 315; *Atlanta & W. P. R. Co. v. Hudson,* 2 Ga. App. 352, 58 S. E. 500; *Griggs v. Dunham* (Mo. App.), 204 S. W. 574; *Byers v. Railway Co.,* 94 Tenn. 345, 29 S. W. 128.

[18] After all, the question is one of relevancy, as to which, in debatable instances, the discretion of the trial judge is entitled to much consideration. 1 Jones on Evidence, sec. 164; 1 Wigmore on Evidence, sec. 444; *Riverside Cotton Mills v. Waugh,* 117 Va. 386, 393, 84 S. E. 658. Where the conditions are substantially similar in essential particulars, the evidence is admissible, and its weight is to be determined by the jury. As said in 22 Corpus Juris, page 759: "The weight to be attached to evidence of experiments is for the jury, and varies according to the circumstances of similarity existing between the experiments made and the actual occurrence, the facts of which are under investigation." See further, in support of this paragraph, *Byers v. Railway Co., supra; Panhandle, etc., Ry Co. v. Haywood, supra; Illinois Cent. R. Co. v. Burns,* 32 Ill. App. 196; *Clark v. State,* 38 Tex. Cr. R. 30, 40 S. W. 992; *Augusta R., etc., Co. v. Arthur,* 3 Ga. App. 513, 60 S. E. 213.

It would, perhaps, be improper to conclude this opinion without referring to the cases *Seaboard, etc., Co. v. Joyner's Adm'r,* 92 Va. 354, 23 S. E. 773; *Tucker's Adm'r v. N. & W. R. Co.,* 92 Va. 549, 24 S. E. 229, and *N. & W. R. Co. v. Dunnaway's Adm'r,* 93 Va. 29, 24 S. E. 698, cited by the defendant to support the general proposition that there is no liability in this case. Joyner, Tucker and Dunnaway were all persons to whom the de-

fendant owed no duty of discovery, and there was nothing in either of the cases to put the engineer on notice of the danger to a human being until too late to avoid the accident. In the instant case, it was the engineer's duty to exercise reasonable care to discover the plaintiff's decedent, and there was evidence, by persons who had made the tests, tending very strongly to show that the child's identity ought to have been discovered in ample time to prevent the injury.

For the reasons stated, we are of opinion that the issue in this case was one to be tried by the jury; that there was no error in the admission of testimony or in respect to the instructions, and that we cannot properly interfere with the verdict.

The judgment is accordingly affirmed.

*Affirmed.*