## Staunton.

MARY J. NEICE, ADM'X OF MILDRED LEE NEICE, DECEASED, v. NORFOLK AND WESTERN RAILWAY COMPANY.

September 12, 1930.

Absent, Holt and Gregory, JJ.

*Randolph Henry* and *Davis, Davis & Davis*, for the plaintiff in error.

*Funkhouser & Apperson*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This is an action by notice of motion brought by plaintiff in error to recover damages for the death of Mildred Lee Neice, a child seventeen months of age, who was killed by a train of the defendant company. There was a verdict and judgment for the defendant, which is now before us upon a writ of error.

The defendant maintains through the city of Buena Vista a single line of railway track running in a general northerly and southerly direction from Hagerstown, Maryland, to Roanoke, Virginia. At a point some distance south of the depot at Buena Vista the track is traversed by a roadway commonly known as Copper's Crossing. Plaintiff contends that this roadway is in fact a street of the city, while defendant contends that the same is a mere private crossing leading across its tracks to the home of plaintiff, situated approximately 225 feet from the crossing.

At a point just north of Copper's Crossing the defendant's track commences to curve in a westerly direction. From this point, however, and in a northerly direction the track is then approximately straight for some 800 feet, at which point the track again curves in a westerly direction toward the station at Buena Vista. About 145 feet north of the crossing on the western side of the track the defendant maintains a pump house and tool house which obstruct the view of the roadway leading from the residence of plaintiff's intestate up to a point very near the western rail of the track. In addition to the obstruction caused by this pump house, the view of the engineer, in approaching the crossing

in question, is also obstructed by the projection of the boiler of his engine, the evidence disclosing that the seat of the engine in the cab is approximately forty-four feet behind the front end of the engine or boiler. In connection with the extent to which the view of the crossing and road approaching the same from the Neice house is obstructed, the evidence tends to show that the engineer approaching the crossing cannot see the east side thereof for a distance of some 600 feet; that he cannot see the roadway leading from the Neice house to the crossing at all on account of the view being cut off by the pump house; that he cannot see the right or west rail at the crossing after the engine passes the pump house because the projection of the boiler in front of the cab obstructs the view for a distance of about 145 feet; that on account of the projection of the boiler the center of the track at the crossing cannot be seen for a distance of from 200 to 300 feet; that the left or east rail of the track at the crossing, or the territory lying east of the east or left rail, cannot be seen for a distance of from 200 to 300 feet; the vision likewise being interfered with by the projection of the boiler. As to the view the fireman would have of the crossing, the evidence discloses that on account of the projection of the boiler and the curve in the track the fireman did not have any view of any part of the crossing or of the territory immediately adjacent to it for a distance of from 400 to 500 feet.

The accident occurred about 2:15 o'clock P. M., and according to the evidence the day was clear and the visibility good. The evidence of the plaintiff is to the effect that she had put a clean dress on Mildred in the front room of the house and had gone into the kitchen to get water and a towel to bathe the child's face; when she returned to the front room Mildred had disappeared.. While searching for her she was summoned to the front door of the house and informed by a neighbor, Burrell Garrett, that the child had been struck by the train; that the child

lived eight minutes after being struck; that it was about three minutes from the time it was left in the front room until she was notified of the accident.

There is no evidence as to the direction the child took in going from the Neice home to the railroad track, what it did along the route, or the manner in which it approached the track. Only one witness, Garrett, saw the child prior to the time of the accident. He did not see her until she was on the crossing. As he expressed it: "It was on the track, looked like it had just stepped up there; I could not tell * * *. When I saw the baby the train was in about four or five feet and it hit the baby and carried it about forty or fifty feet, carried it over on the other side of the bank."

The plaintiff also offered the evidence of C. B. Malcolm, a civil engineer, and others, for the purpose of showing the distance (as claimed by plaintiff) from which the child could have been seen from the engine; and also for the purpose of showing that an experiment or test had been made with another child of approximately the same age as the deceased, wearing the same dress worn by her. All of the evidence relating to the experiment or test was, on motion of the defendant, excluded by the court.

The testimony introduced by the defendant may be thus summarized: The train in question left the station at Buena Vista and was proceeding south at a speed of about twenty miles per hour (according to the testimony of the engineer, Hambrick), and at a speed of between twenty and twenty-five miles per hour (according to the testimony of the fireman, Harvey). As the train approached the crossing both the engineer and the fireman were keeping a lookout ahead all the way from the station past the crossing in question. The engineer blew his whistle about 1,400 feet from the crossing and blew a second time as he was crossing the little bridge which is about 200 feet north of the crossing. The

engineer had a view of the west side of the crossing from the time he came around the curve south of the station until he reached the pump house heretofore alluded to, at which time his veiw of the crossing was completely hidden on account of the projection of his engine. Until his view was so obstructed, he was looking ahead and there was no child on or near the crossing. Until his engine passed the pump house he did not have a view of the roadway leading from the Neice home to the crossing because the pump house obstructed his view of the roadway; however, after passing the pump house he had a view of the approaching roadway but there was no child upon it. He did not cease to look straight ahead except when passing the bridge just north of the pump house to look up to get hold of his whistle cord in order to blow the whistle.

The fireman, Harvey, testified that he was in his seat in the left side of the engine; he was running his stoker and looking ahead along the railway track all the way from the station until the engine passed over Copper's Crossing; he did not see the child on the crossing but first saw the child when it was rolling down the bank about thirty feet from the crossing; he therefore told the engineer that a child had been struck; the engineer at first did not understand him, but when he did understand, he put the brake on and the train was stopped within 700 or 800 feet. He further testified that he was keeping a lookout and while he had a view of the crossing until he got within 400 or 500 feet of it, he did not see the child on or near the crossing. He explained that when the engine reached a point within 400 or 500 feet of the crossing the curve in the track and projection of the boiler prevented his having any view of the crossing or the territory very close to it within that distance.

At the conclusion of the testimony plaintiff offered eleven instructions which the court refused to give.

■ ■ In the case at bar, it conclusively appearing that plaintiff's intestate was an infant seventeen months of age,

no question of either concurring or contributory negligence is involved. The gist of the action is the primary negligence of the defendant. A careful consideration of the record clearly demonstrates that unless the negligence of defendant could have been shown by the experimental evidence offered by plaintiff, then no evidence of negligence upon the part of the defendant has been adduced.

It is earnestly argued by counsel for plaintiff that the circumstantial evidence and all fair inferences to be drawn therefrom are conclusive that Mildred Lee Neice left her home and proceeded directly to the railroad crossing in plain view of those in charge of defendant's engine. It is true that the mother testified that only three minutes had elapsed from the time of the child's disappearance to the time of the accident. This was but a mere computation, however, and instead of it being conclusively shown that the engineer and fireman could have or should have seen the child in time to have avoided the accident, the whole occurrence is a matter of pure speculation. It was because of this nebulous state of the evidence that the court refused to admit the evidence of the test made tending to show that a child could be seen on the track for a distance of from six to twelve hundred feet from the crossing.

In the case of *Norfolk & W. Ry. Co.* v. *Henderson*, 132 Va. 297, 111 S. E. 277, where the court permitted a test to be made, the facts and circumstances were totally different from the facts and circumstances in the instant case. In the *Henderson Case*, a child twenty-six months of age was actually seen upon the track by the engineer, fireman and two brakemen at a distance of 1,200 feet from the point of the accident; they testified, however, that they thought that the observed object was a piece of paper or a white chicken. No effort was made to stop the train in time to avoid the accident. Evidence was very properly admitted, as held by Judge Kelly, to show that a test made under

conditions similar to those which existed at the time of the accident, clearly demonstrated that a child could be easily recognized at the fixed distance of 1,200 feet. In the case at bar there is no evidence upon which an experiment or test could be predicated. Instead of being ruled by the *Henderson Case, supra,* we are of opinion that the case at bar is ruled by the doctrine laid down in *Norfolk & W. Ry. Co.* v. *Sollenberger,* 110 Va. 606, 66 S. E. 726, 857, and cases cited therein.

As we are of opinion that a recovery against defendant could not be maintained in any event, it becomes unnecessary to discuss the assignments of error relating to the admissibility of evidence and refusal of the trial court to give the instructions offered by plaintiff.

Our conclusion, then, is to affirm the judgment of the lower court.

*Affirmed.*